## Erie City Iron Works *versus* Barber & Co.

1. A corporation engaged in the manufacture and sale of goods is charged with the same responsibility to purchasers as are natural persons under similar circumstances; it is therefore answerable for the fraudulent representations of its agent, made within the ostensible scope of his authority while transacting the business of the corporation.

2. To warrant a recovery in an action of deceit for fraudulent representations, the defendant or his agent must have been guilty of some moral wrong. Legal fraud, unaccompanied with moral fraud, will not support the action.

3. In such case, to prove fraud it is not necessary to show that the person making the fraudulent representations knew them to be false; it is sufficient to prove that he did not know them to be true, or if believing them to be true, that he made them without reasonable grounds for such belief. The fraudulent purpose is essential.

4. The knowledge of an untruth, or the want of reasonable grounds for believing such representations to be true, will not be inferred solely from the fact that such representations were untrue, and an action of deceit for false representations cannot be maintained upon such representations as are believed by the maker, upon adequate information and reasonable grounds, to be true.

5. A manufacturer or seller of goods for a particular purpose is liable in an action in the nature of deceit, if the goods prove unfit for such purpose, even though there be shown no fraudulent intent and no scienter be proved. Such recovery is sustained on the ground of an implied warranty and not on the ground of fraud.

6. Where, however, the gist of the action is not the implied warranty but the tort or fraud of the manufacturer or seller in falsely representing the goods to be fit for a specified purpose, the manufacturer or seller will not be liable, if such representations were made in good faith and upon reasonable grounds for the belief in their truth. In such case a scienter must be averred and proved and a moral fraud shown.

7. Where a person, without sufficient knowledge, assumes to be an expert, he will be liable as for deceit or false warranty, if he make any false representations in matters pertaining to his art, even though he believed such representations to be true. If, however, he made such representations as the agent of another, in order to make the principal liable in an action of deceit on the ground that the agent assumed to be an expert, there must be proof that the principal participated in the wrongful act. The mere relation of principal and agent will not justify the inference that the agent is authorized to profess to be an expert and competent as such to make representations.

8. Whether, if an expert has in fact skill and adequate knowledge of the subject of which he speaks, and makes representations in matters pertaining to his art which he believes to be true, though untrue, to a party who relies on them, he would be liable in deceit for false representations,—not decided.

[Erie City Iron Works *v.* Barber.]

9. In an action of case to recover damages for the partial destruction of a mill, the rental value of such mill during the time that it was necessarily idle while being repaired, should be included in estimating such damages. *Aliter*, if the mill were wholly destroyed.

10. Where files of letters are offered in evidence, and their exclusion is assigned as error, the Supreme Court will not consider the assignment unless such letters, or such material portions thereof as are necessary to show their pertinency to the cause at issue, are printed in the paper books.

11. Where a court gives proper instructions to the jury, but reserves the question whether such instructions are correct, and the jury render a verdict in accordance with such instructions for the plaintiff, and judgment is entered on the verdict, and not non obstante veredicto, the fact that the points were defectively reserved, is immaterial and will not constitute ground for reversal.

12. An indefinite and defective verdict *held* to be cured by the Act of March 14, 1872, P. L., 25.

March 26 and 27, 1884.    Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, GREEN and CLARK, JJ.    STERRETT, J., absent.

ERROR to the Court of Common Pleas, No. 1, of *Philadelphia county :* Of July Term, 1883, No. 188.

This was an action of deceit by Phineas M. Barber and Ambrose B. Henderson, trading as P. M. Barber & Co., against the Erie City Iron Works, to recover damages for the loss sustained by said plaintiffs in the partial destruction of their mill by the explosion of a boiler, which explosion was due to the alleged deceit of the defendant in selling the plaintiffs a defective boiler, and in falsely and knowingly warranting such boiler to be safe and fit for use. The case was twice tried. At the former trial the plaintiffs obtained a verdict and judgment thereon, which judgment was reversed on writ of error and a new venire awarded. (See Erie City Iron Works *v.* Barber & Co., 6 Out., 156.)

At the present trial, the plaintiffs sought recovery upon their count for deceit, which, as amended, was as follows :

"And also for that heretofore, to wit, on the day and year aforesaid, to wit, at the county aforesaid, the defendant·being a manufacturer of a certain boiler which defendant was desirous that plaintiffs should purchase for use in a certain mill stocked with lumber and machinery, of which plaintiffs were the owners, in consideration that plaintiffs would then and there purchase said boiler for use in said mill, defendant falsely and fraudulently warranted said boiler to be equal to, to wit, flange iron, and to be entirely safe and fit for use, and the plaintiffs then and there relying upon said false and fraudulent warranty of said defendant, purchased said boiler for

use in said mill, but defendant was guilty of a breach of duty, deceit and negligence in so as aforesaid warranting said boiler, because said boiler was on the contrary not equal to flange iron, and was entirely unfit and unsafe for use, of which defendant had then and there notice, and well knew at the time of making the said warranty."

The defendant pleaded not guilty.

On the trial, before PEIRCE, J., the following facts appeared: In the month of January, 1874, the plaintiffs, who owned a lumber mill, desired to replace a worn-out steam boiler with a new one.  Barber, the senior partner, accordingly went to the place of business of one Isaac H. Shearman, who was the exclusive agent of the defendant company, a corporation engaged in the manufacture of boilers, for the sale of its goods in Philadelphia.  Barber, after stating the specific purpose for which he wished the boiler, entered into an agreement with Shearman's foreman, one Gladwin, to purchase for $1,300 one of the Erie Company's boilers, which was to be made in accordance with certain specifications drawn up by one Heathcote, with which Barber furnished Gladwin.  These specifications provided, inter alia, that the boiler was to be made of flange iron of three-eighths of an inch in thickness, and should be of sufficient strength to safely carry a pressure of 120 pounds of steam.  This contract was entered by Gladwin in Shearman's order book, and signed therein by Barber; the entry thus made differed from the Heathcote specifications in one respect, by providing that the "boiler was to be made of the best flange iron throughout, unless requested to make upper half of C. H. No. 1 shell, when $50 will be deducted." The entry was headed "Ordered from Isaac H. Shearman," and the only reference made to the Erie Company was that the boiler should be "without fittings as specified in the Erie sheet."  The testimony was conflicting as to whether the contract was made by Barber & Co. with Shearman individually or as agent of the defendant company.

Upon the delivery of the boiler, the plaintiffs discovered upon inspection that it had not been constructed in accordance with the Heathcote specifications.  Instead of being made of flange iron, the material used was C. H. No. 1; its thickness was five-sixteenths of an inch, and not three-eighths, as specified by the contract; the maximum pressure which the boiler would safely bear was subsequently found to be less than 100 pounds.  Upon this discovery, Barber went to Shearman's office, where he met Selden, the president of the defendant company.  An interview thereupon took place, of which Barber testified as follows:

"I told Mr. Gladwin when I reached the office, you have not

[Erie City Iron Works *v.* Barber.]

sent the boiler you agreed to make us; he said 'it was our mistake;' he said 'I am very glad our president Mr. Selden, is right here and I will bring him into the office;' we sat down to the table and I directed my conversation then to Mr. Selden; I said to him as I had said to Mr. Gladwin, that this was not the boiler that he had agreed to make; he said 'it is not, Mr. Barber, it is not the kind of a boiler, but I pledge you my reputation as a boiler maker and my honor as a gentleman, that the boiler you have got is equal in every respect to the one you want, and superior in many respects;' I said 'Mr. Selden, if it is all in a name and you will guarantee this boiler equal to the one I was to have, if the difference was in a name I mean if the difference was all in a name, and this boiler is as good, and you will guarantee it in every respect equal to the other one, I will roll it in and use it;' he assented and I took the boiler."

On Cross-examination. "Mr. Selden said it was not the boiler we were to have; but what words he used I do not know, he said it was better in some respects and equal in every respect and he scientifically commenced telling me why. I said well, I don't know anything about boilers, but if that is so I'll roll it in."

Selden testified as to this interview as follows: "I asked Mr. Gladwin to send for Mr. Barber to come to the office, that I would like to see him. Mr. Barber came, I told him the boiler had not been made according to order, and said that is my mistake and no one was in fault in the matter but myself, and it was so usual in practice to put C. H. No. 1 iron in the shell of a boiler that I must from force of habit in making the order for the iron have ordered C. H. No. 1. I further said to him, 'I will either make you another boiler according to specifications given or I will allow Mr. Shearman $50 off the price of that.' I furthermore told him I considered C. H. No. 1 fully as good for the shell of a boiler of that kind as flange iron, and in some respects better; that it had a higher tensile strength was less liable to blister. I had been assured by the makers of the iron that that brand of iron was strictly charcoal hammered iron, pure charcoal iron. After some further conversation Mr. Barber said I will tell them to roll in the boiler."

The boiler was thereupon accepted by the plaintiffs for use in their mills and $500 was paid in part payment of the purchase money. On May 2, 1874, the boiler after having been used by plaintiffs' some forty-eight days, and while carrying 85 pounds pressure of steam, exploded and damaged the plaintiff's mill, and stopped its operations while being repaired for over forty days. The plaintiffs offered the testimony of experts and other witnesses to prove that the explosion was due

to the defective construction of the boiler, that the boiler was made of a poor quality of iron, was improperly braced and was not of sufficient thickness; that had it been manufactured as originally ordered by the plaintiffs the explosion would not have occurred, and that the defendant must have known that the boiler was unsafe and unfit for use, and that his representations as to its safety were false and untrue. The defendant, on the contrary, offered evidence to show that the iron was good in quality and better for the purposes of the plaintiff than flange iron; that it was of proper thickness, and that its defects, if any, were latent and could not have been discovered by the defendant. Selden testified that great care was taken by the defendant company in procuring the iron and manufacturing the boiler; that the iron was ordered from a reputable firm, who assured him of its excellent quality; that the defendant company had made nearly 5,000 boilers, ninety per cent. of these being made with C. H. No. 1 iron, and that this was the only boiler thus manufactured by the defendant, which the witness knew to have exploded.

The plaintiffs offered evidence to show the rental value of the mill during the time that they were deprived of its use by the explosion. Objected to. Objection overruled and evidence admitted. Exception. (First and second assignments of error.)

The defendant offered in evidence the monthly files of its business correspondence with Shearman, for the purpose of disproving the allegation that Shearman was its agent. Objected to. Objection sustained and evidence excluded. Exception. (Third assignment of error.) [The evidence thus excluded was not printed in the paper books.]

The defendant submitted the following points:

1. As the boiler according to the plaintiffs' own showing was not made according to the contract, and this was known to the purchaser at the time he accepted it, after opportunity for inspection, the implied warranty of the maker or contractor under the contract ceased, and the plaintiffs to recover must show actual knowledge of the defects, and a fraudulent design on the part of the defendants to induce the plaintiffs to accept the article.

*Answer.*—I affirm this with the qualification that if you find that the defendants through Mr. Selden, their president, falsely affirmed that this was a good boiler without knowledge of its qualities as a boiler, then the company are also liable. (Fourth and fifth assignments of error.)

4. The plaintiffs can claim only on the ground of actual fraud, that is, a conscious intentional act to defraud by knowingly selling a boiler that was unsafe or unfit for use.

10 OUTERBRIDGE.—9.

[Erie City Iron Works *v.* Barber.]

*Answer.*—I affirm this with the qualification which I made relative to the first point that if there was a false affirmation that it was a good boiler, without the defendant knowing whether it was good or bad, then also they are liable. (Sixth assignment of error.)

12. That is, the plaintiffs can recover if they have satisfied the jury that defendants knew the boiler was made of defective materials, and was dangerous to be used, and deceived the plaintiffs.

*Answer.*—I affirm that point, but add, as I do to the other points of this character, that if they affirmed it was a good boiler without knowing it was good, and thus induced the plaintiffs to take it, they would be liable. (Eleventh and twelfth assignments of error.)

13. They are not liable even if the materials were defective, if they honestly believed them to be sufficient and good merchantable iron for the purpose of being used as a boiler.

*Answer.*—I do not affirm this point as it is, but add to it the qualification I have put to the other points similar. I hold it would not excuse them if they undertook to falsely affirm that this was a good boiler without knowing whether it was good or bad. (Thirteenth and fourteenth assignments of error.)

14. If the jury believe that the defendants were ordered to make a boiler of $\frac{5}{16}$ iron, and did not know the particular pressure it was intended to bear at the time they made the representations of fitness, the plaintiff cannot recover on the ground of fraud unless the jury believe the defendants actually knew the boiler as made was dangerous, and fraudulently concealed the fact, or with knowledge of the falseness made the representation as to fitness.

*Answer.*—I add the same qualification, that is, that if they made affirmations respecting the boiler, which were not true in fact, and they did not know anything about it, then they are liable. (Fifteenth and sixteenth assignments of error.)

15. There is not any evidence that Shearman ever, or any other person communicated to the defendants the pressure expected to be used, and hence this fact, even if it is true that this was the order given to Shearman, cannot be considered on the questions of fraud and deceit.

*Answer.*—I affirm that fact—adding, however, that if Shearman was the agent of the company, that he was bound to communicate to his principal all the requirements for the boiler, and if he failed to do it, his failure to do it must fall not upon the plaintiffs but upon the defendant. (Seventeenth and eighteenth assignments of error.)

16. The fact that Shearman may have known that the plaintiffs intended the boiler to be $\frac{3}{8}$ thick, or that it was to bear a

pressure of 120 pounds are perfectly immaterial as to the claim for deceit or fraud, even if he was acting as their agent, unless he communicated these facts to the defendants, and they were known by them at the time the representations were made which induced the acceptance of the boiler.

*Answer.*—I add a similar qualification to that—Shearman was bound to communicate it, and if there was any damage done on account of it, defendants must suffer the damage consequent upon their own agent's negligence. (Nineteenth and twentieth assignments of error.)

17. There is not any evidence which warrants the jury in finding there was willful or actual fraud or deceit practiced by defendants on the plaintiffs.

*Answer.*—There is no direct evidence that Mr. Selden personally knew at the time he made this representation that this was a bad boiler, the evidence is that he ordered the iron of a good company, and the iron had a good reputation. But if he represented, as I have before said, that it was a good boiler when he did not know whether it was a good boiler, then the company would be liable. (Twenty-first and twenty-second assignments of error.)

The court, in its general charge, left it to the jury to determine whether Shearman in selling the boiler to the plaintiffs, acted as the agent of the defendant or on his own account, and whether the boiler was defectively constructed and unfit for use. It further charged:

" If you find that there was defective iron in the boiler and it was defectively made, then arises the question whether the representations made by Mr. Selden to Mr. Barber were knowingly false. Whether he knew that the iron was bad or the boiler was defectively made. And if so, gentlemen, and you find that the contract was with the Erie Works, if you find that the iron was imperfect and the boiler imperfectly made, or either, and that that was known to Mr. Selden and that he knowingly represented that as being equal to the other boiler that was ordered, then the Erie City Iron Works would be liable. It must be for damage consequent on this deceit. Gentlemen, I think I may go a little further in this case and say to you that if Mr. Selden did not know that the boiler was bad, either in bad workmanship or in the quality of the iron, but without knowing absolutely asserted that the iron was good and the workmanship perfect, or without any further words it was a good boiler, suitable for the purpose for which it was intended, then he would be liable, the company would be liable, upon his false assertion of matters respecting which he did not know, if you find as facts that the iron was bad and the workmanship defective; in other

words, if he did not know he ought not to have said anything respecting it. If he did know then he was guilty of direct deceit and fraud. But if he undertook to assert that the boiler was a good one, when he did not know whether it was good or bad, then the company would also be liable by reason of this false representation made by him, if in fact the boiler was a bad one.

"As to the question of damages, gentlemen, in conformity with the opinion of the supreme court I instruct you, that if you should find for the plaintiff, damages must be compensatory only. Neither speculative or vindictory. The true measure thereof was the amount of money required to put the mill and machinery, including the boiler, in as good condition as they were before the explosion, and that for all incidental damages, such as loss of profit, and the like, the interest on the money thus expended must be regarded as a full equivalent. Therefore, if you find for the plaintiff you will assess the damages by that rule, and the supreme court says including the boiler, but I instruct you with respect to that, that as but $500 was paid by the plaintiff on account of the purchase money of this boiler, I think the damage with respect to the boiler must be limited to that of $500.

"I will instruct you as to the measure of damages that if you find for the plaintiff the value of the boiler, I will reserve as a question of law for the court in banc whether this instruction is right or not, with the power to reduce the sum $500, if the court should be of the opinion that the instruction was wrong. As to the rental value, I instruct you to find as a separate item what the rental value of the property was for 48 days or 2 months or 60 days; as the time may be, as you may find the time from the evidence, and I reserve the point whether or not it is to be included as a part of the damages in the case."

The jury rendered a verdict as follows: "Verdict for plaintiffs, $7,038. · Rental value of mill, $1,000." The defendant subsequently moved for judgment on the points reserved *non obstante veredicto;* on June 30, 1883, the court, on motion of plaintiffs, entered judgment for plaintiffs on reserved points for:

"Damages, exclusive of rent, . . . . $7,038 00
"For rental value of premises, . . . 1,000 00

$8,038 00 "

The defendant thereupon took this writ of error, assigning as error the admission of evidence as to the rental value of the mill during the time in which it was idle after the explo-

[Erie City Iron Works v. Barber.]

sion, the exclusion of the correspondence between the company defendant and Shearman, the refusal to simply affirm and the answers to his points, *ut supra*, the entry of judgment on a verdict that was void for uncertainty, and upon points which were improperly reserved, and subject to which the verdict was not taken.

*Richard C. McMurtrie* (with him *Nathan H. Sharpless*), for the plaintiff in error.—To admit evidence of the possible rent, which the defendants in error might have received for their mill during the period in which it was idle, was to allow speculative damages. That this was error, is clearly shown by this court in their former disposition of this case: Erie City Iron Works *v.* Barber & Co., 6 Out., 156.

The learned judge in his answers to our points and in his charge to the jury, lost sight of the distinction that exists between a liability arising out of a contract or the relation of the parties express or implied, which is contractual, and the liability which arises when there is no contract, but a deceit whereby another is induced to act on a representation, and it is untrue and damage ensues. There the gist of the action is deceit. In the language of pleading, the scienter, that is the knowledge of falseness, is *essential* to recovery; in the language of evidence there must be a *conscious untruth*, and this conscious untruth must be proved: Staines *v.* Shore, 16 Pa. St., 200; Vanleer *v.* Earle, 2 Casey, 279. In order to make a person liable in an action of deceit for a fraudulent representation, he must have been guilty of some moral wrong, or, in other words, of actual fraud. Constructive fraud will not make him liable: Collins *v.* Evans, 5 Q. B., 820; Taylor *v.* Ashton, 11 M. & W., 401; Charlton *v.* Hay, 32 L. T., 96; Kennedy *v.* Mail Co., L. R. 2 Q. B., 580; Evans *v.* Edmonds, 13 C. & B., 786; Thom *v.* Bigland, 8 Ex., 725; Barley *v.* Walford, 9 Q. B., 197; Huber *v.* Wilson, 23 Pa. St., 178; Weidler *v.* Bank, 11 S. & R., 139. The defendants in error sought to impute fraud to the plaintiff in error in this case, in two ways, 1st. The alleged fraud of Selden, as its agent. But this, if conceded, only charged the Erie company with constructive fraud, and this is not sufficient to sustain an action of deceit. Weidler v. Bank, *supra*. 2d. The alleged fraud of the plaintiff in error in representing that the boiler was safe. But it does not appear that this untruth was knowingly uttered, or that Selden was not entirely honest in his representations. If a man states that which he knows to be false, or that of which he has no knowledge, or at least not adequate knowledge, he is certainly guilty of fraud; but the learned judge went a step further and throughout his answers

and his charge instructed the jury that if Selden made repre-
sentations, which he believed in good faith to be true, and of
which he had reasonable grounds for believing he had knowl-
edge, and such representations were untrue in point of fact,
that such honest mistake was an actual fraud and made the
plaintiff in error liable. We think the court failed to properly
distinguish between want of actual knowledge, and the
absence of any knowledge, and between the misfortune of an
honest mistake and the culpability of a conscious untruth.
If the action had been on a guaranty of Selden's representa-
tions, the *bonâ fides* of the representation or the ignorance of
their falsity would be immaterial. But as this is an action
not ex contractu but in tort, the gist of which is actual fraud,
it was error to hold that an honest mistake was equivalent to
a conscious falsehood.

The court also erred in entering judgment on an uncertain
and defective verdict and on points improperly reserved:
Clark v. Wilder, 1 Casey, 314; Irwin v. Wickersham, id.,
316; Winchester v. Bennett, 4 P. F. S., 510; Wilde *v.* Trainor,
9 id., 442; Robinson v. Myers, 17 P. F. S., 18; Miller v. Bed-
ford, 5 Norris, 457; Verrier v. Guillou, 1 Out., 69; Elkins v.
Susquehanna Ins. Co., 40 Leg. Intell., 426.

*Richard P. White,* (with him *George H. Earle, Jr.,*) for the
defendants in error.—The rule that an action of deceit can-
not be based upon constructive fraud does not apply to a cor-
poration, which can only act through its agents and be guilty
of constructive fraud. *Ex necessitate rei* corporations are
exceptions to the general rule. In this case the boiler was
ordered of a manufacturer for a particular purpose, and only
accepted by the defendant in error on the express guarantee
of the plaintiff in error that it was fit for that purpose. In
such case, on principles of public policy, the manufacturer or
seller is conclusively presumed to know the quality of the
article he sold, and he will be liable in an action of deceit,
should such article prove otherwise than as represented to the
injury of another, even though the false representations were
made in good faith and with a belief in their accuracy: Jones
*v.* Bright, 3 M. & P., 155; S. C., 5 Bingh., 540; Brown *v.*
Edgington. 2 M. & G., 281; Randall *v.* Newson, L. R. 2 Q. B.
D., 102; Hyman *v.* Nye, L. R. 6 Q. B. D., 685; Work *v.*
Leathers, 97 U. S., 380; Macfarlane *v.* Taylor, L. R., 1 Sc. Ap.,
245; Bowes *v.* Shand, L. R. 2 Appeal Cases, 455. We also
submit that actual knowledge by Selden of the falsity of his
assertions was not necessary to our recovery in this case, for
the further reasons, (1) That Selden made these assertions
in regard to matters pertaining to his own business. In such

case, the law raises a conclusive presumption of his knowledge of their falsity, and holds him bound to know their truth: Bigelow on Fraud, 57; Lynch v. Trust Co., 18 Fed. Rep., 487; and (2) because Barber, knowing nothing about boilers, and desiring to rescind his contract, went to Selden as an *expert*, who thereupon "pledged his reputation as a boiler maker" that the boiler was safe and fit for use. The representations were therefore not only those of a seller and a manufacturer but of an expert boiler maker, and the plaintiffs in error are liable, whether or not Selden knew of their falsity. Bigelow on Fraud, 59, 60. These exceptions are well recognized by the authorities and do not rest so much upon the principles of constructive notice as upon that of equitable estoppel, and the rule that "a party shall not be permitted to be benefitted by his own wrong." The law, in other words, having made knowledge on the part of a manufacturer or expert an imperative duty, will not permit him to plead in defence a neglect of that duty: Mersey Docks v. Penhallow, 1 H. of L., 93; Dolan v. Albion Common Council, 15 Rep., 596; Reber v. Tower, 11 Mo. Ap., 209.

As the judgment was not entered on the reserved points, it is immaterial whether or not they were properly reserved. Pearson v. Hartman, 4 Out., 86. The instructions of the court as to the measure of damages were not erroneous: Horton v. Hall, 1 Penny., 159; Hunter v. Land, 32 P. F. S., 296; Little Schuylkill Nav., R. R. & Coal Company v. French, id., 366; Vanderslice v. City, 7 Out., 102.

Mr. Justice TRUNKEY delivered the opinion of the court October 6, 1884.

In case of finding for the plaintiffs the jury were instructed to assess the damages in two parts: 1. All damage exclusive of the rental value of the mill during the necessary time for making repairs, and 2. The rental value for such time; the court reserving the point whether the plaintiffs were entitled to recover rental value for the time required to repair the injury. Had the mill been entirely destroyed its value would have been compensation. If worth repairing, how can compensation be made without allowance for the time it was necessarily idle? In determining the difference between the market value of the mill just before and just after the injury, it would be as proper to consider the time required to make the repairs as the other things in the expense of making them. The witness who testified respecting the rent may not have been well qualified to estimate its value, but he had some knowledge of the subject, and the testimony was sufficient for

submission.   The first and second assignments of error, treated
as good in form under the rules, cannot be sustained.

Nor are the last six assignments well taken.   The judgment
is on the verdict, not for the defendant notwithstanding the
verdict.   Hence, if the jury were rightly instructed relative
to the damages it is immaterial whether the points of law
were properly reserved.   None of the instructions respecting
damages is assigned as erroneous.   It is clear that the jury
found damages, exclusive of rent, $7,038, and for rent, $1,000,
in all $8,038.   If not strictly correct in form, the Act of
March 14, 1872, P. L., 25, provides that a verdict shall not be
set aside for "defectiveness or indefiniteness in form."   Fol-
lowing the instruction, the jury found one item of the damages
separately, and the result is the same as if they had merely
found the total sum for which judgment was rendered.   The
court charged that as only $500 was paid by the plaintiffs on
the purchase money of the boiler that damage for the boiler
must be limited to that sum ; and reserved the point of law
whether the sum paid on the boiler should be included in the
damages.   There was no direction to find separately as to this,
and the instruction was right.   Had the court struck off $500
from the verdict the plaintiffs could raise the question whether
the point was well reserved.

The president of the company testified that Shearman was
their sales agent, under a verbal arrangement, except what
might have been embraced in correspondence ; that with their
knowledge he held himself out as their agent ; that he received
the goods at a fixed price and made what he could above that
for his remuneration, and that the goods belonged to the com-
pany until sold.   This is the pith of the abundant testimony
of Shearman's agency, and if there was some evidence tending
to show that the contract was actually between Shearman,
acting for himself, and the plaintiffs, it is by no means so
strong as to warrant the court to rule that the jury ought not
to have found that Shearman acted as the defendant's agent
when the plaintiffs contracted for the boiler.   Nor should the
third assignment be sustained.   The offer was files of letters,
each book a monthly file, from November, 1873, to April,
1874, to show that the whole correspondence between Shear-
man and the defendant was inconsistent with the idea of
principal and agent, and not a letter or part thereof, which
was rejected, has been printed or shown so that it may be
determined whether it was pertinent.

Whatever may have been the precise terms of the original
contract, the parties agree that the boiler was not made
according to the order, and that the plaintiffs had declined to
accept it until after certain representations by the president

[Erie City Iron Works v. Barber.]

of the company defendant. One of the plaintiffs testifies that the president said the boiler was equal in every respect to such an one as ordered and superior in many respects, and also guaranteed the boiler to be good and in every respect equal to the one which had been ordered. The president denies that he made a guaranty. There is scarcely dispute respecting the fact that the boiler was ordered and manufactured for a particular purpose, and that its acceptance upon the representations of the manufacturer was for that purpose. Expert witnesses on the part of the plaintiffs testify that the boiler was unsafe, poorly manufactured, made of very bad iron which was not thick enough if good, and that a boiler properly made, as the plaintiffs ordered, would have been sufficient and safe ; also some of them say that the man who made the boiler must have known the inferior quality of the iron. Like witnesses on part of the defendant say the iron was good, as good or better than flange iron, was thick enough, and if there was defect in quality it could not have been discovered by the workman, nor by any person by inspection. For present purposes the verdict settles that the boiler was defective, and that the representations respecting its quality were untrue.

The defendant was engaged in the business of manufacturing boilers, and had built more than any other company or person in the country for a number of years. Selden, the president and general manager of the works, had had large experience in superintending the manufacture of boilers. He testifies that ninety per centum of the boilers of that kind made by the defendant, was made of the same kind of iron as the one sold to the plaintiffs, and that the plaintiffs' is the only one he ever knew to blow up. He states the care that was taken in procuring the iron for this boiler and in doing the work—also that he believed the iron was of high quality, and that he believed the representations that he made to the plaintiffs.

A corporation engaged in the manufacture of machinery ought to be responsible to purchasers the same as natural persons under similar circumstances. As it can only speak or act by agent, there is stronger reason for holding it answerable for the acts and representations of the agent done within the ostensible scope of his authority and while transacting the business of the principal, than where the principal is a natural person. However, the same rule applies alike to natural and artificial persons. "The purchaser can maintain an action of deceit against the innocent principal, when the fraud of the agent has been committed within the scope of his authority, and where the principal has benefited by it. In

this respect it makes no difference whether the principal be a corporation or an individual:" Benjamin on Sales, vol. 2, § 708, (3 Eng. 4 Am. Ed.) "The principal is liable in a civil suit, to third persons, for the frauds, deceits, conceal-ments, misrepresentations, torts, negligences and other malfeasances and misfeasances of his agent in the course of his employment, although the principal did not authorize, justify or participate in, or indeed know of such misconduct, or even if he forbade the acts or disapproved of them.   This rule of liability is not based upon any presumed authority in the agent to do the acts, but on the ground of public policy, and that it is more reasonable when one of two innocent per-sons must suffer from the wrongful act of a third person, that the principal who has placed the agent in the position of trust and confidence should suffer, than a stranger:" Lee *v.* The Village of Sandy Hill, 40 N. Y., 442 ; see Angel and Ames on Corp., §§ 305, 309, 310.   If a corporation be incapable of committing deceit, the safety of third persons with whom it deals by agent, requires that it be held liable in the proper action for the deceit of its agent perpetrated in such dealing. The learned judge of the Common Pleas did not err in sub-mitting the case as if the deceit of the defendants' president and general manager was the deceit of the defendant.

The jury were instructed that there could be no recovery on the alleged express warranty, nor on an implied warranty of the manufacturer and seller ; but if they found that the iron was bad, or the boiler defectively made, and that the con-tract was with the defendant, and that Mr. Selden knew that the boiler was defective in workmanship and material, or either, and represented it as good and equal to such boiler as was ordered, the plaintiffs could recover damages consequent on the deceit.   There is no error in this instruction as respects the point submitted.   The case was put upon the single point—warranty and negligence were excluded as grounds upon which there could be recovery, and only considered as bearing on the alleged fraud.   It had already been decided that the declaration must charge the defendant with having knowingly committed the deceit : Erie City Iron Works *v.* Barber & Co., 6 Out., 156.   And the amendment was accordingly made.   There is no occasion to consider the ques-tion of misjoinder of counts.   That was not raised at the trial.   But is the scienter, a matter so essential that it must be averred in the declaration in an action for deceit, presumed from the fact that the representation was untrue ?

The court did not leave the point as first submitted, but added:   "If Mr. Selden did not know that the boiler was bad, either in bad workmanship or in the quality of the iron,

but without knowing absolutely asserted that the iron was good and the workmanship perfect, or without any further words that it was a good boiler, suitable for the purpose for which it was intended, then he would be liable, the company would be liable upon his false assertion of matters respecting which he did not know, if you find as a fact that the iron was bad and the workmanship defective, in other words, if he did not know he ought not to have said anything respecting it. If he did know then he was guilty of direct deceit and fraud. But if he undertook to assert that the boiler was a good one, when he did not know whether it was good or bad, then the company would also be liable by reason of this false representation made by him, if in fact the boiler was a bad one." This may be regarded as the full instruction frequently epitomized in the answers to numerous points. Thus, in answer to the 17th: "There is no direct evidence that Mr. Selden personally knew at the time he made this representation that this was a bad boiler, the evidence is that he ordered the iron of a good company, and that the iron had a good reputation. But if he represented, as I have before said, that it was a good boiler when he did not know whether it was a good boiler, then the company would be liable."

Under that instruction if Selden had skill and experience and ample reason to believe the boiler was good, and did so believe, he was as guilty of deceit as if he knew it was bad. He may have made it with his own hand, or directly superintended the making, and believed the workmanship and material to be the best, yet if at the time of sale he told the buyer it was good, upon such ruling, he committed actual fraud in case there was a latent and unknown defect. If there was such a defect, it was impossible that he could know it was good. If it was defective it was not good. And the pith of the instruction is that if Selden represented the boiler to be good, and in fact it was bad, the defendant is liable for deceit. In order to make a person liable for a fraudulent representation, he must have been guilty of some moral wrong; legal fraud, unaccompanied by moral fraud, will fail to support the action. But though it is necessary that the defendant in making the false statement should have committed some moral turpitude, it is not necessary to show that he knew as a fact what he stated was false. If he made the representation not knowing it to be true, or without reasonable and probable grounds on which to suppose it to be true, he acted fraudulently. When a man having no knowledge whatever upon a subject takes it upon himself to represent a certain state of facts to exist, he does so at his peril, and if it be done either to secure some benefit to himself or to deceive another, he is

guilty of fraud. By assuming to have knowledge of a material fact when he is conscious that he has not, and representing it as of his own knowledge, in such manner as to import knowledge in him thereof, he commits a moral wrong, similar in character as if he knew the representation to be untrue. The fraudulent purpose is essential: Moak's Underhill on Torts, 547–8. Bigelow on Fraud sets forth the same principles, and it is there said, p. 63, " Deceit cannot be maintained for a false representation, believed to be true, which is based on adequate information ; nor will the plea of fraud, or a bill asking for relief for fraud, be supported by such evidence." True, it is also said that the action can be maintained " for a false representation, believed to be true, but the truth of which the defendant was bound to know." The illustrations given under this rule apply to the case of express or implied representation of· agency, to one professing to be a partner in a mercantile firm, and to a person professing to be an expert and thus competent to give advice in matters pertaining to his art. These and like cases rest on the ground that the representation, though made by mistake or ignorance, operates as an imposition upon the other party, and the person making it, as against an innocent man who has suffered by reason thereof, will not be allowed to say he made it honestly, believing it to be true. There is reason for his liability without holding him guilty of moral turpitude.

The plaintiffs contend their case falls within exceptions to the general rule, one of which is that an action for deceit will lie against a manufacturer or seller of goods for a particular purpose, if unfit for that purpose, although he had no fraudulent intent: Jones *v.* Bright, 5 Bing., 533. It was there held that if a manufacturer sells goods for a particular purpose, " the law implies a warranty that it was fit and proper for that purpose." . . . . . " If a party sells an article for a particular purpose, he thereby warrants it to be fit for such purpose." This and most other cases following in its wake are well collated by Mr. Biddle on Warranties in the Sales of Chattels, §§ 167–183, and the doctrine stated thus: " When a manufacturer or dealer contracts to supply an article, which he manufactures or produces, or in which he deals, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment or skill of the manufacturer or dealer, there is an implied warranty that it shall be fit for the purpose to which it is to be applied, since here, the buyer does not purchase upon his own judgment, but relies upon that of the seller." Without inquiry as to the limitations of this doctrine in Pennsylvania, it is plain that the seller's liability is upon his warranty. An implied warranty is neither more nor less than

a contract, and the remedies for its breach are the same as for breach of an express warranty. That there may be recovery in an action in the nature of deceit does not change the character of the foundation of the right to recover. Formerly it was common to sue in this form—where the claims were on contracts of warranty, and such remedy is not obsolete in this State. The plaintiff may choose either case or assumpsit. "No matter which form of declaration be chosen the plaintiff may recover on an express warranty without either alleging or proving the knowledge of the defendant that it was false. A scienter need only be shown when the action is for deceit:" Vanleer *v.* Earle, 26 Pa. St., 277. Therefore the fact of recovery on a contract of warranty in an action of deceit does not justify an inference that when recovery is sought on the ground of deceit the scienter need not be shown.

The case of Lynch *v.* Mercantile Trust Co., 18 Fed. Rep., 486, is where the vendor of a block of land, by his agent, pointed out certain fences, and stated that the block included all the land between said fences; the representation was false, but believed to be true by the agent when he made it. It was held that the purchaser was entitled to the benefit of his contract and could recover the difference between the value of the property actually sold and the value of the property as represented. Nothing in the facts and judgment in that case tends to show that the vendor was guilty of deceit, or was liable on that ground, though some remarks of the judge may have that tendency. The true ground for recovery in such cases was tersely stated by Chief Justice MARSHALL: "He who sells property on a description given by himself, is bound to make good that description; and if it be untrue in a material point, although the variance be occasioned by mistake, he must still remain liable for that variance:" McFerran *v.* Taylor, 3 Cranch, 270.

In Randall *v.* Newson, L. R., 2 Q. B. D., 102, one of the cases cited by the plaintiffs to support the action of deceit, it was held that the warranty extends to latent defects unknown to and undiscoverable by the vendor, which render the article sold unfit for the purpose intended. There is no gainsaying the correctness of that ruling where there is such a warranty, express or implied. If unfit, by the terms of the contract, the seller is liable for its breach. But that case does not establish the rule that a vendor is guilty of deceit and liable in damages for a tort, where he makes and sells an article, in good faith, representing that it is good and fit for a specified purpose, which contained a latent defect that was unknown and undiscoverable until tried by use. Nor is such principle supported by any other case of which we are advised.

We are of opinion that the jury should have been instructed that if the representation by Mr. Selden respecting the boiler was made in good faith, and that he had adequate reason to believe it was true, there could be no recovery for the alleged deceit. The evidence bearing on the question whether the defendant and its agents knew that the boiler, by reason of bad workmanship or bad iron, was defective and unfit for the purpose intended, or whether there was adequate reason to believe that both the material and workmanship were good, is conflicting, and therefore was for the jury to consider and find the facts therefrom. Deceit should not be confounded with warranty, express or implied; nor with mistake which is often ground for relief of a party who suffers by it against him who made it; nor with legal fraud imputed to a party who has committed no moral fraud.

A number of the defendant's points were rightly refused, but that they could not be affirmed was no reason for including in the answers instruction that if the boiler was represented to be good, and was bad, the defendant was liable. "The law raises no presumption of knowledge from the mere fact that the representation is false."

There is some difference between a judgment for a tort and one on contract. When it comes to execution the defendant has rights in one case that he could not have in the other. The gist of the action should not be lost in its form. If the plaintiffs have chosen to rest their case solely on an alleged fraud in fact, involving moral turpitude, they should be held to its proof as firmly as if it did not appear that there was an express or implied warranty.

Judgment reversed, and venire facias de novo<br>awarded.

The defendants in error subsequently moved for a re-argument on the ground that as the testimony disclosed that Selden assumed the character of an expert in guaranteeing the safety of the boiler, the plaintiff in error was within the exceptions, mentioned by Mr. Justice TRUNKEY, to the rule that the scienter must be proved in an action of deceit; that, therefore, the judgment of the court below should be affirmed.

The motion for a re-argument was refused on October 27, 1884, Mr. Justice TRUNKEY delivering the opinion of the court.

Selden is not the defendant. His office and employment warranted the conclusion that he was the defendant's general agent, and therefore whatever he did within the scope of his authority bound his principal. Of his agency there was

abundant proof, and the fact does not appear to have been denied. In consummating the sale of the boiler, which had been manufactured by the defendant for the plaintiffs, his warranty and representations of quality are treated as if made by the principal. So the learned judge of the common pleas charged; but he did not submit to the jury that if Selden assumed the character of an expert, and the plaintiffs relying on him as such, accepted the boiler on the opinion and representations of said expert, the defendant would be liable. In our view it seems very plain that the case was tried and submitted as if Selden was acting as the defendant's agent. The instructions to the jury contain nothing respecting the liability of an expert for a false statement to one who consults him upon a matter within his art. What evidence is there that the defendant authorized Selden to speak and act as an expert? We are not convinced that the court assumed that the defendant was liable as an expert for what Selden said, and based his instructions on such assumption.

If we have misconceived the basis and import of the instructions, we think we have understood them in the same sense as did the jury. It is true that in this court the plaintiffs contended, both in their paper-book and by oral argument, that Selden professed to be an expert, and that the charge was correct for that reason; but we were not satisfied that the question was raised or mooted at the trial. If it was, it constituted no foundation for the instructions already ruled to be erroneous. All Selden's representations were admissible for the purpose of showing misrepresentation and warranty by the defendant through its agent; not to prove that he was an agent, or an expert, and it is not shown that anything was expressly offered to establish the latter character.

It may be assumed that the law is correctly stated in Bigelow on Fraud, 59, 60, as follows: "One who professes to be an expert in any particular, and thus competent to give advice in matters pertaining to his art, is liable as for deceit or false warranty in case he makes any false statements of substance to another, intending that the same should be acted upon, though he believes them to be true. Thus one who, during negotiations for the sale of lands, professes to have peculiar scientific knowledge of the value of lands for the production of oil, and falsely represents such value, renders himself liable to the purchaser if he rely thereon and is deceived. So, too, if a party makes a representation of facts of which he assumes to have a definite knowledge, superior to that of the party to whom he makes it, or as to that of which the latter

is entirely ignorant, though the same does not relate to the party's own business, he will be liable as for a fraud."

All that applies to the very person who made the profession, or assumption, and representations, and to no other. Nor could any other person be held liable therefor in the absence of proof that he procured the act to be done, or participated in the doing of it. The mere relation of principal and agent does not imply that the principal is responsible for such acts done by the agent while transacting the business with which he was intrusted. It is not to be inferred from the fact of agency that the agent is authorized to profess to be an expert, and thus competent to give advice. Upon other grounds representations by the agent may bind the principal.

It is said that the expert is liable as for deceit or false warranty. Such liability may exist in a class of cases where there is no moral turpitude. If the expert has skill and adequate information of the subject of which he speaks, and makes representations which he believes to be true, though untrue, to a party who relies on them, is he liable for deceit which involves allegation and proof that he knowingly made the false representations? Upon this there is no present occasion to intimate an opinion, nor need reference be made to the views of Mr. Bigelow as expressed in the work already cited.

We are of opinion that the motion for re-argument should be denied.

Re-argument refused.