made during the trial or transcripts ordered by counsel after the trial, but I am inclined to the opinion that transcripts of the testimony under the order similar to that made in this case and completed for counsel after trial, ought to be paid by the county, and in this case it was clearly a necessary part of the costs and could have been recovered by the stenographer, had it not been advanced by the defendant for the transcript for the testimony to make the bill of exceptions, and was properly taxed in the costs, and paid by the defendant in order to get his case into the circuit court.    All costs are supposed to be actually advanced and paid at the time the costs are incurred and the court and the law so treat these costs although this is not the actual practice, and upon a reversal of the case, whether criminal or civil, the plaintiff in error is entitled to recover his costs expended, as was done in this case.

In McCourt v. Commissioners, Hamilton Co., which is reported in the 5 Court Index, 14, is a case in which John McCourt had paid $675.00 to the official stenographer for a transcript of the testimony in a criminal case, No. 11921, in which McCourt had been convicted was reversed by the circuit court, case No. 2028, circuit court of Hamilton county. Judge Moses Wilson held upon a similar proceeding in an appeal from the board of county commissioners made by McCourt to the court of common pleas, that McCourt was entitled to recover and the auditor of the county was directed to issue his warrant upon the treasury of the county for the amount.    And the practice has been followed by the courts of Hamilton county since then.

It therefore becomes the duty of this court to reverse the action of the county commissioners and direct that the auditor of Clinton county draw his warrant upon the treasury of said county for said amount of $713.25.

Thorpe & Miller, for county.
Major Hayes, for plaintiff.

----

(Hamilton County Common Pleas.)
### HARBISON v. ILIFF.

----

*Liability of master for acts of servant—*
The test of a master's liability for the acts of his servants is whether the injury committed by the authority of the master expressly conferred or fairly implied from the nature of the employment and the duties incident to it.

2. *Same—General rule—*
The general and inflexible rule in such case is that for all acts done by the servant under the express orders or direction of the master as well as for all acts done in the execution

of his master's business within the scope of his employment, the master is responsible, but when the act is not within the scope of his employment, or expressly or impliedly in obedience to the master's orders, it is the act of the servant and not of the master, and the servant alone is responsible therefor.

3. *Same Liability of landlord to tenant for acts of landlord's servants—*
The owner of a leased building is not liable to his tenant, for the acts of painter employed by him to enter the leased premises, in the absence and without the knowledge or consent of the tenant, in mutilating, destroying and carrying away personal property belonging to the tenant, unless such acts were authorized, directed or ratified by the owner, although such entry into the premises might have been a trespass.

----

PFLEGER, J.

Plaintiff sued his landlord, the defendant herein, alleging in his second cause of action that "during plaintiff's absence from his residence the defendant employed painters, without the knowledge and consent of plaintiff and without authority of law, to go upon the said premises and as defendant's servants, employes and agents, and under the authority and direction of the defendant, broke and entered said house; that said painters in and upon said premises, did wrongfully mutilate and destroy, take and carry away a lot of chattel property of the value of seven hundred and seventy-five dollars," for which he demands judgment.

Defendant demurs to this allegation on the ground that it does not state facts sufficient to constitute a cause of action, claiming that the employer is not liable for the larceny of his employe, not being within the scope of his employment, and that the acts committed were for the personal gain and advantage of the employe.

But one case cited by the plaintiff and one by the defendant have any bearing upon the issue.    No case has been cited or found covering the larceny of a servant.    It is necessary therefore that the demurrer be decided upon principle.

That a master is liable for the acts of his servants is in direct antagonism with the broader doctrine that every person shall be held to answer for his own wrong.    Therefore, this doctrine is regarded with much jealousy by the courts, and is circumscribed into as narrow limits as is consistent with the true interests of society.    Servants are generally irresponsible and unable to respond in damages; so it is regarded as no more than just that he who has made it possible for him to injure another should, so far as an injury results from the exercise of the power conferred upon

him, be responsible in his stead. Wood on Master and Servant, section 277.

The test of liability is whether the injury was committed by the authority of the master expressly conferred or fairly implied from the nature of the employment and the duties incident to it. The general and inflexible rule controlling in that case is that for all acts done by the servant under 'the express orders or direction of the master, as well as for all acts done in the execution of his master's business within the scope of his employment, the master is responsible; but when the act is not within the scope of his employment, or expressly or impliedly in obedience to the master's orders, it is an act of the servant and not of the master, and the servant alone is responsible therefor. Wood on Master and Servant, section 279, section 286.

There is no such broad rule of law as that a master is not liable for the unauthorized wilful and wrongful acts of his servant, and though such a doctrine has often been propounded in judicial opinions it is now so thoroughly overruled as to need further notice. Shearman and Redfield on Negligence, 150.

Where the servant has authority to commit an act of violence under certain contingencies, the master is liable for the consequences of such an act when committed by the servant under the belief that such a contingency had occurred, or where he uses unnecessary violence, or does it in a manner which makes its consequences unnecessarily injurious, no matter how wilful, malicious and unauthorized the acts may be, or even though he desires to injure his master. Shearman and Redfield on Negligence, 154.

To show how far the courts have gone in holding the master liable for the torts and crimes of servants and when he has been exonerated a few cases may be cited.

In 79 Ga., 460, a railroad company was held liable for murder committed at the place of duty assigned to him by an insane agent known by the principal to be insane.

In Denver v. Harris. 122 U. S., 608, a railroad company was held liable for personal violence used by employes striving to obtain possession of certain lands.

In Levi v. Brooks, 121 Mass., 501, the master was held for a wilful assault committed by the servant, who was authorized to remove certain furniture for a debt, and it was said no matter how wanton or reckless the act, if the violence was for some private end or advantage of the servant to satisfy some spite or revenge, the master would not be liable. The test here is said to have been whether the act was done for the purpose of accomplishing the master's work.

In Toledo v. Harmon 47 Ills.,298, a railroad company was held liable because an engineer, while his locomotive was standing at a crossing, caused the steam to escape whereby a team of horses became frightened. was made to run away and injure persons, on the ground that the master had placed these agencies in the servants' hands and they were used, though wilfully and negligently, to do the mischief complained of. To the same effect was Chicago v. Dickson, 63 Ills., 151; Homans v. Temple, 11 Ills., App., 39.

In Barber v. O'Connell, 162 Mass., 319, the master employed a boy to take care of horses. and while leading such horses from the stable to the yard, this boy invited another to ride, and the second boy was injured. The master was held not liable on the ground that this was not done as a means or for the purpose of performing that work.

In Cox v. Kealy, 36 Ala., 340, a servant permitted a steamboat to collide with a raft, and it was held that the master was not liable where the servant actually wills and intends injury or steps aside from the purpose of the agency and commits and inflicts an intended wrong.

In Golden v. Newbrand, 57 Iowa, 59, a watchman, authorized to prevent breaches of property of hiblyuwdBa x5yhofa,a59atclhwo the peace pursued a drunken man beyond the property of the master and shot and wounded the man. It was held that it was not in the line of the watchman's duty and that the master was not liable.

In Wright v. Wilcox, 19 Wendel, 343, it was held that the dividing line was the wilfulness of the act. The last case is one cited by counsel for defendant, but this doctrine has long since been exploded.

The master was held not liable for trespass in the following cases: 1 East., 106; 24 Conn., 40; 2 Mich., 519.

While the terms, "the course of employment" and "the scope of the authority," are hardly susceptible of accurate definition, both in contract and in tort, the principal is bound to concede that the agent is acting for him, similar to the rule in negligence cases, whenever a reasonably prudent man under like circumstances with the third party caused to act affirmatively or negatively, would conclude that the agent is so acting, provided the appearance of things upon which such third person acted has a casual relation to the injury

In cases where railroad companies have been held responsible for assaults committed by their

servants upon passengers, the ground of liability shifts and they are held on the theory that they undertake an additional duty involving utmost care and good faith, and the master's liability for the fraud of the agent in the course of his master's business was placed on the ground of public policy, that it was more reasonable that the principal shall suffer who has placed his agent in the position of trust than the irresponsible stranger. Erie City Iron Works v. Barber, 106 Pa., 125.

Our own Supreme Court has, however, in a number of cases stated the doctrine applicable to this case more clearly than any that I could find, although none of these have been cited by either counsel. It was held in Railroad Co. v. Shields, 47 Ohio St., 387, 394, that "it was necessary to distinguish between the departure of a servant from the employment of his master and his departure from or neglect of a duty connected with that employment. A servant may depart from his employment without making his master liable for his negligence when outside the employment of his master; and he so departs whenever he goes beyond the scope of his employment and engages in affairs of his own. But he can not depart from a duty entrusted to him, when that duty regards the rights of others in respect to the employment of dangerous instruments by the master in the prosecution of his business, without making the master liable for the consequences." On page 395 it is held that the question is simply whether the wrong inflicted was incidental to the discharge of the servant's functions. Whatever the servant's orbit, when he ceased to be a servant his negligence is not imputable to the master, but within that orbit it is so imputable, whatever the master may have meant. The motive of the servant is immaterial.

In Stranahan v. Coit, 55 Ohio State, our Supreme Court held that the master is liable for the malicious acts of his servant, whereby others are injured, if the acts are done within the scope of the employment and in the execution of the service for which he was engaged by the master, whether the act was one of omission or commission. Railway Co. v. Bank, 56 Ohio St., 351, 381, 388, 391. Where a master owes to a third person the performance of some duty, as to do or not to do a particular act, and commits the performance of the duty to a servant, the master can not escape responsibility if the servant fails to perform it, whether such failure be accidental or wilful, or whether it be the result of negligence or malice. Nor is the case altered if it appear that the malice be directed to the master or is contrary to his purpose of instructions.

In Stranahan v. Coit, 55 Ohio St., 398, 420, it was held that the tendency of modern cases is to attach less importance to the intention of the agent and more to the question whether the act was done within the scope of the agent's employment and his authority, and within the powers conferred on him as agent. Also Railway Co. v. Bank, supra. When they are done outside of the course of the agent's employment and beyond the scope of his authority, as where the agent steps aside from his employment to gratify some personal animosity or to give vent to some private feeling of his own, the principal is not liable.

In distinguishing cases in Ohio the court in Railway Co. v. Shields, supra, illustrated by holding that in case a servant in charge of a construction train left it on a track and built a fire which through his negligence consumed property of another, and in the meantime losses of life resulted from a collision with the train so negligently left standing on the track, the master would not be held liable for the loss resulting from the fire because the act was done outside of the servant's employment, yet he would be held responsible for the loss which occurred from leaving the train on the track, because this was done within the scope of the employment.

And in Stranahan v. Coit, supra, p. 416, the court distinguished the case of Railroad Co. v. Wetmore, 19 O. St., 110, in which a passenger by his importunate conduct and abusive language towards a baggageman induced the latter to strike him with a hatchet, it was held that while the hatchet was an instrument furnished by the master, the master was not liable for the act, because it was not done in the execution of the service of the master. Had the baggageman smashed the passenger's trunk the master

would have been held liable therefor. Or in the case then before it, the court said, that had a servant, who purposely delivered adulterated milk without the knowledge of and for the purpose of injuring the master, lashed the customer with the master's whip, the master would have been exonerated. In delivering the milk the master was held liable.

It is apparent that the larceny of a servant, not authorized or ratified immediately following an unwarranted trespass, which trespass was directed and authorized by the master, such larceny of performing the master's work or connected with the trespass, is not within the scope of his authority, and does not make the master liable. The allegation is that the master authorized and directed the forcible entry, yet the damage is alleged to have resulted not from such entry but from the "Wrongfully mutilating, destroying, taking and carrying away" of certain chattels without any charge that the latter was either authorized, directed or ratified by the master, or any allegation of facts warranting the inference that the mutilation, destruction or taking of the goods was in any way a part of or connected with the employment.

The demurrer is sustained.

Keam & Keam, for the demurrer.

Swing, Cushing & Morse, contra.