SPRIGG v. COMMONWEALTH TITLE INS. & TRUST CO.

(Circuit Court, E. D. Pennsylvania. December 20, 1902.)

No. 41.

1. CONSTRUCTIVE FRAUD—LIABILITY—IMPLIED REPRESENTATIONS IN LETTER.

A letter written by a trust company, copied from a draft prepared by counsel for the firm to which the letter was addressed, by which the company agreed to hold certain bonds of a corporation therein described, in trust for such firm, and which contained certain statements respecting such bonds, construed, and held not to constitute a representation that the bonds were valid, which rendered the company liable for deceit in case

they were not valid, where all the specific statements made were true, and there was nothing in the letter calling for any statement as to the validity of the bonds, and it was admitted that it was signed in good faith and without intent to deceive.

## On Motion to Strike Off Judgment of Nonsuit.

Thomas Leaming, for plaintiff.

I. H. Mirkil and F. Carroll Brewster, Jr., for defendant.

DALLAS, Circuit Judge. The plaintiff's statement of claim, as originally filed, did not disclose what particular wrong the defendant was supposed to have committed. It alleged certain facts, but did not aver the legal effect intended to be ascribed to them. It did not appear from it whether the cause of action declared upon was deceit or was negligence, or whether the design of the pleader was to assert a right of recovery on both of these grounds. I did not doubt that both could, if desired, be included in a single suit ex delicto; but I suggested upon the trial that the statement should, perhaps, be more explicit upon the point I have mentioned, and thereupon the plaintiff moved for leave to amend. The defendant objected, and the court postponed consideration of the question thus raised until the motion to strike off the judgment of nonsuit should be heard. Both of these motions have since been argued, and are now for decision.

I am of opinion that the "amended statement of claim," a copy whereof is annexed to the brief submitted on behalf of the plaintiff, should be received; and accordingly, and in pursuance of the understanding between the court and counsel when the case was on trial, it will now be filed nunc pro tunc, with like effect as if it had been filed by leave of court prior to the entry of nonsuit.

The amended statement is, as plaintiff's counsel claims, and I think correctly, "to the effect that the defendant is liable to the plaintiff for writing a letter stating that it held valid bonds, whereas it did not do so"; and hence it appears that the wrongful act averred is the making of a statement which was not true, and that consequently this is an action of deceit. It is not a case of negligence, in the sense in which that word is ordinarily used to denote the specific wrong which is committed where any duty to exercise care is violated; and therefore such allegations of negligence as the declaration contains are not material, except as they may be pertinent to the question actually presented, which is, was any statement made in the letter which has been adverted to which entitles the plaintiff to recover for the loss which he says was thereby occasioned? This is the letter:

"Philadelphia, April 29th, 1893.

"Messrs. Rice Brothers, Providence, R. I.—Gentlemen: We are in receipt of an order from the Standard Coal and Timber Co., of West Virginia, instructing us to hold in trust for you one hundred first mortgage $1,000 bonds of said company, the same being part of an issue of 1,000 bonds, $1,000,000, all of which are equally secured by a first mortgage or deed of trust dated May 2nd, 1892, made to the Commonwealth Title Insurance and Trust Company of Phila. as trustee by the said Standard Coal and Timber Company of West Virginia, covering 204,000 acres of mineral and timber lands located in McDowell county, in said state of West Virginia. The company is incorporated

under the laws of the state of West Virginia, and the bonds are secured by the first mortgage or deed of trust now held by us as trustee. Said mortgage or deed of trust, together with certified abstract of title, opinions as to the value of property covered by said mortgage or deed of trust, maps, surveys, and other papers relating to the same, have been carefully examined and approved by us, and are now in our possession. We will hold the one hundred (100) bonds subject to your order.

"Respectfully yours,                          A. A. Stull, Treas."

This letter was copied from a draft which had been written by the counsel of the firm to which it was addressed, and, as will be observed, it referred to a certain order, which order is as follows:

"A. A. Stull, Esq., Secty. Commonwealth Title, Insurance & Trust Company, Philadelphia, Pa.—Dear Sir: You will please hold in trust or deliver to the order of Rice Brothers, lumber dealers of Providence, R. I., one hundred (100) first mortgage one thousand dollar ($1,000) bonds of the Standard Coal and Timber Company, in accordance with the terms of mortgage or trust deed held by you to secure said bonds.

"Respectfully yours,       Standard Coal and Timber Company,
                                       "By O. O. Cokefair, Asst. Secty."

To make the statement of the circumstances under which the defendant signed the letter complained of sufficiently complete, it is necessary only to add that the draft of it was brought to the trust company by a person selected by the gentleman who had prepared it. It was not signed with intent to deceive. This is admitted, and, upon the proofs, could not be denied. But it is insisted that it contained statements of fact which were untrue, and that for their untruthfulness the defendant, though guiltless of conscious falsehood, was, by reason of the circumstances of the case, legally responsible. This contention cannot be sustained. The draft of letter was virtually a communication of inquiry, and its signature by the trust company was coupled with no duty upon its part but to see to it that, by the statements which it contained, the inquiries which it impliedly put were not untruly answered, either with knowledge of the untruthfulness of the matters stated, or in culpable ignorance of their falsity. Pol. Torts, p. 355; Iron Works v. Barber, 106 Pa. 125, 51 Am. Rep. 508. This duty was not violated. The statement that the defendant was in receipt of the order mentioned in the letter was true, as was also the designation of the bonds to which it referred as being a part of those which were secured by the coal and timber company's mortgage. It is equally true that the company was incorporated as stated, and that the mortgage and other papers had, as a matter of fact, been examined and approved by the trust company, and were then in its possession. Apart from its last sentence, which is reserved for separate consideration, it seems to me, therefore, to be perfectly clear that the letter was faultless. It did, indeed, describe the bonds in question as being part of an issue of 1,000 bonds, whereas, technically speaking, the issuance of 1,000 bonds had not occurred. But it is to be remembered that the language of this letter was not that of the trust company, but of the persons to whom it was addressed, and I think it is manifest that the word "issue" was neither understood by the one, nor intended by the other, to be significant of anything beyond fixing the identity of the bonds, and this it correctly did. It is likewise evident that the

word "secured," as it occurs in the letter, is also merely descriptive, and does not import either a warranty or a representation that the security of the bonds was perfect in law or was adequate in fact. Neither can the statement that the mortgage and other papers had been examined and approved be regarded as equivalent to a positive assertion that the title upon which the mortgage rested was a good one, and, at most, it amounted to nothing more than an expression of opinion, for which, of course, the defendant could not be held responsible. There remains, however, the promise with which the letter concludes, viz., "We will hold the one hundred (100) bonds subject to your order;" and it is insisted that here, at least, there was a misrepresentation for which the defendant is liable, because, as is claimed, the promise so made was calculated to induce the belief that the bonds to which it related were in all respects valid bonds, whereas certain acts necessary to their perfection had not been performed. This insistence is not well founded, either in fact or in law. The draftsman of the letter, who apparently had some knowledge of the matter he was writing about, did not in any part of it indicate that he desired information upon any subject not expressly covered by its terms. If he had wished to be apprised whether all things requisite to the perfection of the bonds had been done, he certainly should have included in his draft some statement upon that subject which could fairly be said to have directed attention to it. But this was not done, and now the effort is made to charge the defendant with fraud by ascribing to the word "bond," as used, an effect which cannot for a moment be supposed to have been intended. It is, of course, possible to conceive of a case in which a person speaking of bonds might be understood as necessarily meaning valid bonds; but this is not such a case. These obligations had been executed by the obligors. It was perfectly natural, therefore, that the draftsman of the letter should refer to them as bonds; and the defendant had no reason to suspect that it was really his purpose (if it was) to obtain an assurance of their validity. The implied question was, "Will you hold the one hundred (100) bonds subject to our order?" The answer of the trust company was, "We will;" and they have done so. The promise respected the particular bonds to which the letter had previously referred, and, as there has been no breach of that promise, I am utterly at a loss to see how the defendant incurred any liability, enforceable either by an action of tort or of contract. It is not asserted that it was guilty of purposed deception, and, upon the undisputed facts, a finding by the jury that it had acted with recklessness equivalent to fraud could not possibly have been sustained. Griswold v. Gebbie, 126 Pa. 363, 17 Atl. 673, 12 Am. St. Rep. 878. As was said by Lord Bramwell in Weir v. Bell, 3 Exch. Div. 243, "There never can be a well-founded complaint of legal fraud, or of anything else, except where some duty is shown, and correlative right, and some violation of that duty and right;" and, applying the principle thus tersely expressed, the conclusion seems to be inevitable that the plaintiff in the present suit wholly failed to make out a case. Therefore his motion to strike off the judgment of nonsuit is denied.