Anderson v. Hays Manufacturing Company, Appellant.

*Negligence—Explosion of boiler—Duty of inspection.*

In an action to recover damages for injuries to a building caused by the explosion of a boiler in the adjoining premises, the testimony showed that the boiler was purchased from a reputable manufacturer, that on two occasions some months prior to the explosion it was repaired by skillful boiler makers, and that two months before the explosion it was examined and reported to be in good condition by inspectors of an insurance company which insured the boiler. The evidence tended to show that the

boiler could not have been in good condition at the date of the last inspection and for some time before. *Held*, that proper instructions for the jury were that if they find there was no evidence of want of care upon the party defendant in selecting competent mechanics to make the repairs, and that if the evidence shows an inspection by competent persons after the repairs were made and before the explosion, then even if they should find that the mechanic and inspectors did not perform their duty, the defendant is not answerable for their neglect.

No manufacturer can turn over the supervision of his boiler and machinery to an insurance company and thereby exempt himself from the penalty of negligence by their mere report to him, that his boiler is in safe condition. He must go further, and prove that the insurance company's inspectors were competent and that they did properly inspect and truthfully report.

Argued April 29, 1903. Appeal, No. 108, Jan. T., 1903, by defendant, from judgment of C. P. Erie Co., Feb. T., 1902, No. 143, on verdict for plaintiff in case of W. C. Anderson v. Hays Manufacturing Company. Before MITCHELL, DEAN, FELL, MESTREZAT and POTTER, JJ. Reversed.

Trespass for injuries to real estate caused by the explosion of a boiler.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $1,978.13. Defendant appealed.

*Errors assigned* among others were (2, 3) answers to defendant's fourth and fifth point quoted in the opinion of the Supreme Court; (6) refusing binding instructions for defendant.

*Frank Gunnison*, with him *T. A. Lamb*, for appellant.—The defendant owed the plaintiff no contractual duty. Its liability in this case depended on whether or not it was negligent in using the boiler which, by its explosion, caused the damage to the plaintiff's property. The fellow-servant principle is not involved in the decision of this case, but " there is no difference between liability to a stranger and to a servant for a man's own negligence or want of skill : " Ardesco Oil Co. v. Gilson, 63 Pa. 146 ; Kilbride v. Carbon Dioxide, etc., Co., 201 Pa. 552.

We contend :

1. That the proprietor of a manufacturing or other plant, in

which he has a steam boiler, is bound in the matter of repairs
to an inspection of the same to the same extent, and no fur-
ther, as he is in the original purchase.   When he purchases
from a reputable maker, he is not liable for any injuries result-
ing from improper construction or material, unless he himself
was negligent in not discovering it.   The purchase from a com-
petent and reputable manufacturer protects him.   So if he
contracts the repairs of the boiler to a competent and reliable
boiler maker, and the inspection of it to competent and reliable
inspectors, being unskilled himself, he ought not to be liable
for improper or negligent performance on their part, if he is
guilty of no negligence. himself.

2. That he is performing his duty, when, being himself un-
skilled, he adopts the methods in general use among those in
the same business, both as to repairs and as to inspection : P.
& R. R. R. Co. v. Hughes, 119 Pa. 301; Bemisch v. Roberts,  .
143 Pa. 1; Lineoski v. Susquehanna Coal Co., 157 Pa. 153;
Mansfield Coal & Coke Co. v. McEnery, 91 Pa. 185; Titus v.
Bradford, etc., R. R. Co., 136 Pa. 618; Service v. Shoneman,
196 Pa. 63; Fick v. Jackson, 3 Pa. Superior Ct. 378.

*Henry E. Fish,* with him *John S. Rilling, C. L. Baker* and
*Clark Olds,* for appellee.—The case was properly submitted to
the jury : Lewis v. Seifert, 116 Pa. 628 ; Smith v. Hillside
Coal & Iron Co., 186 Pa. 28; Penna. & N. Y. Canal & R. R.
Co. v. Mason, 109 Pa. 296 ; Bier v. Standard Mfg. Co., 130 Pa.
446 ; McGuigan v. Beatty, 186 Pa. 329; Mullan v. Phila., etc.,
Steamship Co., 78 Pa. 25 ; Tissue v. B. & O. R. R. Co., 112 Pa.
91 ; Lancaster Ave. Improvement Co. v. Rhoads, 116 Pa. 377 ;
McGroarty v. Wanamaker, 187 Pa. 132; Ricks v. Flynn, 196
Pa. 263 ; Lannen v. Albany Gaslight Co., 44 N. Y. 459; Lan-
ing v. N. Y. C. R. R. Co., 49 N. Y. 521; Flike v. Boston &
Albany R. R. Co., 53 N. Y. 549; Booth v. Boston & Albany
R. R. Co., 73 N. Y. 38; Mann v. Del. & Hudson Canal Co.,
91 N. Y. 495 ; Bushby v. N. Y., L. E. & W. R. R. Co., 107
N. Y. 374 (14 N. E. Repr. 407) ; Ford v. Fitchburg R. R. Co.,
110 Mass. 240 ; Monihan v. Hills Co., 146 Mass. 586 (16 N. E.
Repr. 574) ; Nord Deutscher Lloyd Steamship v. Ingebreg-
sten, 57 N. J. L. 400 (31 Atl. Repr. 619) ; Bellville Stone Co.
v. Mooney, 60 N. J. L. 323 (38 Atl. Repr. 835).

OPINION BY MR. JUSTICE DEAN, October 12, 1903 :

The defendant is a manufacturing corporation engaged in the manufacture of brass and plumbing goods at Erie, Pa. In the year 1890, it purchased from a reputable manufacturer of steam boilers a kind of boiler in general use and put it in place in its plant. In January, 1901, while in use, a leak was noticed in the shell of the boiler. The manager, who was also vice president of the manufacturing corporation, had not the mechanical knowledge or skill requisite to the inspection or repair of the boiler, therefore he employed a competent boiler maker to inspect and make the necessary repairs. He, acting on his best judgment, put a patch over the place of the leak on the outside of the boiler, in the manner usually adopted to repair such leaks. In July following a second but smaller leak showed itself at the edge of the patch ; as before, the vice president of the company employed a skillful boiler maker to repair it, instructing him to make proper repairs. He put on a second patch covering the new leak and extending partly over the first patch, thoroughly tested his work, believed that it was strong and had accomplished its purpose. The boiler remained in seemingly good condition until October 9, 1901, when it exploded. The manufacturing company had the boiler insured by a responsible boiler insurance company doing a large business not only in Erie but throughout the country. The insurance company, by inspectors, examined all boilers insured by it four times a year : these inspections extended to an external and internal examination of the boilers ; the last examination of the boiler by the agents of this company was on August 18, 1901, two months before the explosion ; it then, in substance, reported to defendant that from the result of the company's examination the boiler was in good condition. After the explosion it was discovered that in all probability, the boiler could not have been in good condition at the date of the last inspection and for some time before. There was what is called a groove or the inside caused by increase and reduction of pressure incident to the use of steam ; the evidence showed, that grooves or cracks in boilers are not unusual, but that a groove of the extent of this one was very rare. There was considerable testimony that a thorough examination of the boiler at the time

the second leak was repaired, or subsequently, when the insurance company inspected it, could not have failed to disclose this groove, with a consequent condemnation of the boiler. The plaintiff was an adjoining hotel keeper whose property was seriously damaged by the explosion. Alleging, that his injury was caused by the negligence of defendant in not providing and maintaining reasonably safe machinery in and about its manufacturing premises, he brought this suit for damages. The court below submitted the evidence on the question of defendant's negligence to the jury; they found against defendant, and from the judgment entered on their verdict we have this appeal. Although there are eight assignments of error, we concern ourselves only with the second and third, for they involve all of substance of which appellant complains. Defendant's counsel in their fourth written point asked the court to charge the jury thus:

" That the undisputed evidence showing that the defendant committed the repair of the boiler in question in January, 1901, to Charles Hauer, and in July, 1901, committed the repair of said boiler to Fred Hauer, Jr., and that the said Charles Hauer and Fred Hauer, Jr., were competent boiler makers, the defendant exercised no supervision or giving no directions as to how said repairs should be made, the defendant is not responsible for any error in judgment or negligence upon the part of the said Charles Hauer or Fred Hauer, Jr., or either of them."

*Answer :* Refused.

In their fifth written point they ask the court to charge the jury thus:

" The undisputed evidence showing that the defendant had its boiler insured by the Hartford Steam Boiler Inspection and Insurance Company, that the boiler was inspected periodically by the inspectors of said company, that the defendant relied upon such inspection together with the monthly overhauling of the boiler and cleaning it out by the regular employee of defendant, and that it is a common usage among boiler users and manufacturers in and about the city of Erie to rely upon the inspection of boiler inspectors of boiler insurance companies, that the defendant had a right to rely upon such inspections to determine the safety of its boiler, and is not liable for any error

in judgment or negligence in the inspection of such boiler by the said inspectors."

*Answer:* "This point is refused."

There was sufficient evidence to show that the groove in the boiler was there for months before the explosion; that it was there before the repair of the second leak; that it was there before the last examination of the insurance company's inspectors; further, there was ample evidence from which the jury could have found that a reasonably thorough examination would have disclosed to the boiler repairer or the boiler inspector its dangerous condition. It must be assumed from the evidence that the duty of examination was committed to both sets of men by the defendant. It is also clear, that the manager and officers of defendant company not being boiler makers or mechanical experts could not have examined and judged for themselves. Considering their ignorance of the subject, having no knowledge on which to base a correct judgment, it would have been recklessness if they had attempted to perform a duty for which they were manifestly incompetent. It was their duty to do as they did, employ others who were competent to perform that duty. The evidence seems to show beyond dispute that they did employ competent men; that is, competent so far as knowledge, mechanical skill and ordinarily acute perceptions are concerned. There may have been neglect by one or more or all of these men; that is, neglect to observe what would have been obvious to them if a reasonably careful examination had been made. Should this neglect be imputed to defendant? That is the question involved in the two written requests quoted, the answers to which are complained of as error. Not only did the court refuse to announce the law as prayed for, but affirmatively instructed the jury in the general charge thus:

"We say to you as a matter of law in this commonwealth, when the defects existed and those cracks (leaks) were discovered, it was the duty of the owners and operators of that boiler to repair it, and their duty to exercise ordinary care in making their repair, and that that was a duty they could not delegate to Charles Hauer nor Fred Hauer, nor anybody else. That if they did so, and Fred Hauer or Charles Hauer were negligent the company is responsible for that negligence. This is also true with reference to the inspection."

Technically, there was no error in peremptorily negativing the two written points as quoted, for defendant assumed facts in them which were for the jury to pass upon. True, the weight of the evidence would seem to have established the facts as claimed in the points, but the credibility of the two Hauers and Hitchcock, the vice president who, it was alleged, employed them to repair the boilers, and gave them their instructions and to some extent undertook to see that his instructions were carried out, was for the jury. It was the duty of defendant, acting by its officers, to employ competent mechanics to make the repairs, to exercise reasonable care in ascertaining their competency, and then to see to it that they did the work intrusted to them; that as reputable machinists and skillful workmen they adopted a plan for the repairs and carried it out. Of course, further than this he could not go; he had neither the knowledge nor the skill requisite to enable him to determine whether a proper inspection had been made by the men he employed, whether they had adopted the right plan, or adopted the right method to carry it out. It was not his duty to bring to the performance of the work personal mechanical skill and the knowledge of an expert; but his duty was more than mere perfunctory employment of two mechanics to do a certain job of repairs; it was that of an employer having in charge a powerful force, dangerous to his employees and the neighborhood unless reasonable care was exercised in keeping it in a proper condition of repair. He was bound to know, either from the observation which a nonexpert could make, or from the reports of the mechanics themselves, that the work required of them had been done. In other words, he was not absolved from all further duty of reasonable care by the mere employment of two mechanics to do the work; the duty or general supervision of the work by the employer to the extent noticed, still continued.

The same may be said of the work of the insurance company inspectors. On August 18, about two months before the explosion, J. P. Swain, inspector for the company, makes report to defendant, that after inspection, "internally there is considerable scale at rear end of boiler. Heads, tubes and shell plates show no defects." The report then goes on to make suggestions for additions to the boiler attachments and

connections, but gives no hint that it needs repairs. It is probable from the risk assumed by the insurance company, that their inspectors were competent and performed their work with care, but the inspectors themselves were neither called nor sworn; what examination they made appears only from this report to defendant by one of the company's officers. It seems to say an internal examination of the boiler was made, also an external one only two months before the explosion and that there were no defects to be repaired. There was considerable evidence on the part of plaintiff, that if a proper internal examination, by entrance through the manhole into the boiler had been made, the large groove or crack to which the explosion is attributed would certainly have been discovered. However this may be, it could not be said, that the undisputed evidence showed a proper inspection by the insurance company, or that in the shape the evidence was presented, a mere, somewhat vague report by an officer of that company not sworn to, was the exercise of reasonable care on part of defendant not disputed. We, therefore, think that technically the court below committed no error in refusing the points as they were framed.

And if the law of the charge should be determined on the simple negativing of these two points, we would not reverse. But the instruction does not stand on them alone; nor do we think the learned judge of the court below intended it should. The answers stand side by side with the positive instruction already quoted from the general charge; from the two it seems to us the jury would necessarily understand that it did not matter if the Hauers, the two machinists, were fully competent, the insurance company's inspection thorough and its report truthful, and that defendant was guilty of no actual negligence in relying on them, nevertheless the defendant could not delegate its duty of putting the boiler in good repair to competent mechanics or expert insurance inspectors, and that if it did so, and either the mechanics or insurance company's inspectors were negligent defendant must answer for the consequences of such negligence. This is not the law. It either makes the owner of a boiler, as nearly every manufacturer is, an insurer, or it compels each owner to be an expert boiler maker, which he is not. We concede, that there is some ap-

parent conflict in the authorities in our own state on the question, but we apprehend when they are closely examined no real one. Most of the cases which treat of the subject are between servant and master. In such cases a contractual relation exists; impliedly, the master engages to furnish the servant reasonably safe tools and appliances with which to perform the master's work and to give to the youthful or inexperienced servant suitable instructions as to the dangerous nature of the work and peril in the use of the particular machinery; and the question of reasonable care by the master is frequently complicated by the question, as to what risk the servant assumed by engaging in that particular hazardous employment.

The question is also in many cases complicated by the further question, was the injury attributable in any degree to the servant's own negligence or to the negligence of a fellow servant. Here none of these elements are present. The plaintiff carried on a hotel in a closely adjoining building, but he had no business connection with defendant or its manufacturing plant and the sole question is, what duty did defendant owe him in the construction and repair of its boiler?

The law as laid down by the learned judge of the court below is based on the idea, more elaborately set forth in his very able opinion overruling the motion for a new trial, that where a servant is entrusted with the performance of a personal duty of the master he is a representative of the master and the master is answerable to third persons for the negligent performance by the servant of the master's personal duty. He then assumes, that the inspection and repair of the boiler was a personal duty of defendant, which it delegated to the machinists and insurance company inspectors; hence their neglect, if there was neglect, was defendant's neglect and it is answerable to plaintiff for the consequences. Therefore, he dismisses as of no application, the long line of authorities in our own state of which Titus v. Bradford, etc., Railroad Co., 136 Pa. 618, is the most conspicuous example, which hold that " the unbending test of negligence in methods, machinery and appliances is the ordinary usage of the business." There are cases both in the United States courts and in several of the states, which hold a different doctrine and one closely approaching, if not identical

with, that laid down by the court below; but we have not found one which does not hold the same general principle as in Titus v. Railroad Co., supra. That principle in all of them is this : that a personal duty delegated by the principal to an employee does not shift the burden of responsibility for the proper performance of that duty from the principal but the principal continues responsible. This as a general proposition of law is correct and all our cases hold the same; but when we come to determine the extent of the personal duty of the principal we diverge from the outside cases cited. The definition of negligence, " absence of care according to the circumstances," remains in all the cases the same ; but we hold that the circumstances in cases like the one before us do not indicate negligence beyond the point where personal supervision and judgment must, in the very nature of the case, end. For instance, it was the personal duty of defendant to see that the boiler was kept in repair; if after knowledge of the leak it had unreasonably neglected to have it repaired and an explosion had occurred, it would have been answerable for the neglect of a personal duty. And when in the performance of duty it ordered the repairs, it was still its further duty to select competent persons to make them and either from their reports, or from other sources know, that the work had been done by those who knew best how to do it. It knew there was a leak in the boiler, the exact location or extent of the fracture causing the leak, it did not personally know and could not ascertain because it had not the mechanical skill and knowledge.

There was no personal duty on the vice president to crawl through the manhole into the boiler to ascertain, and if he had done so it is doubtful if such an act would have increased his knowledge of the nature and extent of the fracture. Therefore, representing the defendant, at this juncture, he was incapable of a personal examination, and he had a right to entrust the personal examination to skillful mechanics and inspectors; yet up to this point personal duty with all of its responsibilities was still on defendant and it is answerable for any negligence in the performance of it. But if it selected skillful and competent mechanics to make the repairs deemed necessary by them to insure the safety of the boiler and they reported that the necessary repairs had been made, and if afterwards in the in-

terval between the repairs and the explosion, competent in-
spectors reported in substance, that no further repairs were
needed and if either, without the knowledge of defendant, neg-
lected his duty, the defendant is not responsible for that
neglect.    There was no personal duty upon it to do that which
it could not do at all and which those whom it employed could
do well; it would have been negligence in defendant if it had
undertaken to do that for which it was wholly unfit.    Surely,
in sound reason, if it would have been negligent to employ
known incompetent mechanics, it would have been no less
negligence for the manager, conscious of his own ignorance, to
attempt on personal examination to make the repairs himself.

Of course there are certain relations which imply a greater
responsibility than this, such as that of an innkeeper to his
guest, a common carrier to its passengers and freight customers
and some others; but as between the owner of a manufactur-
ing plant and an adjoining property owner, the former owes to
the latter only " care according to the circumstances;" if he
exercise that care, he is as innocent as the householder, whose
building by no fault of his own catches fire and by reason of
proximity to his neighbor's house the latter catches fire and is
consumed.    He is not answerable to his neighbor in damages.
The theory on which most of the outside cases supporting the
ruling of the court below, seem suggestively at least, to be
based, is that where an innocent person is damaged by an acci-
dent like the one before us, some one must have been negligent,
and in absence of other evidence, that one must have been the
owner of the dangerous machinery.    In this state we do not
hold this to be correct as a legal proposition, for where the owner
shows that he has exercised due care he is as innocent as the
injured party.    There is, therefore, no reason why the loss
should be imposed upon him.    Hundreds of accidents from the
use of powerful machinery happen every year, which are not
traceable to the fault of anybody; accidents which no human
care could guard against, except by the abandonment of the
use of such machinery.    It does not follow, that for every such
accident some one must respond in damages to an innocent in-
jured party.    The latter is without remedy, unless, by compe-
tent evidence, he establishes a failure of duty on the part of
him charged; such failure will not be assumed, on mere proof

of accident and damage. We think, therefore, that the law of this state does not impose upon defendant so extensive a personal duty nor such an absolute responsibility as announced by the learned judge of the court below.

As a matter of evidence, we do not think that the mere report of the insurance company was conclusive that its inspectors had made a proper inspection of the boiler. The report is not accompanied by any deposition as to the fact or extent of the examination or as to the competency of those who made it; and while the fact that defendant received it, was some evidence of care on its part, the weight it ought to have in determining care is for the jury. No manufacturer can turn over the supervision of his boilers and machinery to an insurance company and thereby exempt himself from the penalty of negligence by their mere report to him, that his boiler is in safe condition. He must go further, and prove that the insurance company's inspectors were competent, that they did properly inspect and truthfully report, if he invokes the full weight of the act in his favor on the question of due care.

As to the repair of the two leaks, there was evidence that the two mechanics employed were competent, and that defendant in employing them to repair had followed the "usage" of the business, not only in the city of Erie but elsewhere. The credibility of the witnesses is, however, for the jury. As we have said time and again, no man is held to a higher degree of care in his conduct than that of the average prudent man. We are of opinion, that on a retrial the court below should instruct the jury, that if they find there was no evidence of want of care upon part of defendant in selecting competent mechanics to make the repairs, and that if the evidence shows an inspection by competent persons afterwards, and before the explosion, then even if they should find, that the mechanics and inspectors did not perform their duty, the defendant is nôt answerable for their neglect. In other words the same test of negligence should be applied as in Titus v. Railroad Co., supra ; Ford v. Anderson, 139 Pa. 261 ; Mansfield Coal & Coke Co. v. McEnery, 91 Pa. 185, and like cases. The test of liability in most of the cases cited from other states is not the exercise of due care by the employer in selecting the man to do the work, nor the competency of the man employed to do the work for which

the employer was not competent, but the efficacy of the work. This is not the test of reasonable care in this state and therefore the judgment is reversed and a v. f. d. n. awarded.