# James McNeil & Brother Company *v.* The Crucible Steel Company of America, Appellant.

*Negligence—Boiler explosion—Liability of corporation when in control of another corporation.*

Where a boiler explodes in the plant of a corporation and the explosion is the result of the negligence of the company, another corporation which has entire control and management of the plant and business of the first corporation and every one of whose officers and directors are officers and directors of the first·corporation, may be held liable for injuries to third persons resulting from the explosion.

*Negligence—Boiler explosion—Inspection—Independent contractor.*

When the engineer of a corporation who is an expert in the care and inspection of boilers, has a boiler repaired under his own supervision and direction by a workman of an independent firm of boiler makers, and the boiler is insufficiently repaired, is left in a dangerous condition, and subsequently explodes, the corporation is liable for injuries to third persons resulting from the explosion, and it will not be heard to say as a defense that the work was done by an independent contractor, or that the work had been regularly inspected by the county inspectors of boilers. Anderson v. Hays Mfg. Co., 207 Pa. 106, and Service v. Shoneman, 196 Pa. 63, distinguished.

The enactment of boiler inspector laws is but an exercise of the police powers of the state. Such laws are not intended to serve as an impenetrable shield to the negligence of the owner.

*Negligence—Boiler explosion—Damages—Profits.*

In an action to recover damages for injuries caused by the negligent explosion of a boiler on the property of the defendant, the damages cannot include the probable loss of profits which might have been earned by the plant destroyed during the period of rebuilding. Erie City Iron Works v. Barber & Co., 102 Pa. 156, followed.

*Appeals—Objectionable remarks by attorney—New trial.*

Objectionable remarks of an attorney in the argument are for the consideration of the court below on a motion for a new trial, and will not be considered by the appellate court as grounds for reversal.

Argued Oct. 29, 1903. Appeal, No. 34, Oct. T., 1903, by defendant, from judgment of C. P. No. 1, Allegheny Co., March T., 1902, No. 185, on verdict for plaintiff in case of James McNeil & Brother Company v. Crucible Steel Company of America. Before DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Trespass to recover damages for injuries to plaintiff's property.

The facts appear by the opinion of the Supreme Court.

Verdict·and judgment for plaintiff for $46,746.94.    Defendant appealed.

*Errors assigned* sufficiently appear by the opinion of the Supreme Court.

*H. L. Castle,* of *Stone & Stone,* for appellant.—A person who uses a steam boiler on his premises in such a manner as not to constitute a nuisance, is not liable for damages caused by its explosion, where there has been no fault or negligence on his part; but he will be liable for damages caused by his negligence in the management of the boiler or in using it when in a defective condition : Kilbridge v. Carbon Dioxide, etc., Company, 201 Pa. 552; Earle v. Arbogast, 180 Pa. 409; Ardesco Oil Co. v. Gilson, 63 Pa. 146; Service v. Shoneman, 196 Pa. 63.

The court below in effect attempted to reverse the Supreme Court in the case of Erie City Iron Works v. Barber & Co., 102 Pa. 156.

*W. B. Rodgers,* with him *A. M. O'Brien,* for appellee, cited on the question of damages : Imperial Coal Co. v. Port Royal Coal Co., 138 Pa. 45; Schlitz Brewing Co. v. McCann, 21 W. N. C. 244.

OPINION BY MR. JUSTICE DEAN, January 4, 1904 :

Plaintiff owned and operated a steel plate mill in the city of Pittsburg; immediately adjoining was the manufacturing plant of the Park Steel Company, which it was averred by plaintiff was controlled and managed by defendant, the Crucible Steel Company.    On December 20, 1901, about four o'clock in the afternoon, there was a disastrous explosion of three tubular boilers in the Park Steel Company's mill.    Besides the damage to the Park Company's mill, it destroyed much of the machinery and a large part of the building of the plaintiff's plate mill.    The exploded boilers had been purchased about two years before and put in place by Munroe & Sons, a reputable firm, of boiler makers in Pittsburg.    They were second-

hand boilers.   Only a day or two before the explosion, Munroe & Sons had sent a mechanic in their employ to examine and make necessary repairs to them.   After the explosion, an examination of the fractured boilers and the fragments of them showed that the steel in them was burned, indicating that the water had been permitted to run down in them while in use. They were old and in some spots or patches badly corroded, so that the steel was quite thin.   The plaintiff averred that the explosion and the consequent damage was caused by the negligence of defendant in not maintaining and operating its boilers with the care demanded by the circumstances, and therefore it was answerable in damages to the injured plaintiff. The damage it was entitled to recover, it claimed was : 1.  The cost and expense of restoring the building and machinery to their condition immediately before the explosion.   2.  Compensation for loss sustained by interruption of its business during the time it was rebuilding.

The court submitted the evidence, which was quite conflicting, bearing on the question of negligence to the jury, also the evidence tending to show the plaintiff's loss from destruction of property as well as loss during the time that the mill was being restored.   The verdict was for plaintiff in the sum of $46,646.94 which the jury specified as including $10,000 profit for loss of business and $2,247.20 interest.

Judgment was entered for plaintiff on the verdict, and we have this appeal by defendant, who prefers twelve assignments of error.   Four of these assignments, somewhat abbreviated by us, embrace the main points of appellant's complaint.   They are as follows, that the evidence shows and the court should have so instructed the jury :

1. That the actual owner and operator of the exploded boilers was the Park Steel Company, and if there was negligence, it was the negligence of that company and not of defendant, therefore, there could be no recovery.

2. The evidence shows that immediately before the accident Munroe & Sons, competent and reputable boiler makers, were employed as independent contractors to repair the exploded boilers; that they did repair them and reported them in good condition, therefore defendant is not responsible.

3. That the boilers were regularly inspected by the official

inspectors of Allegheny county and duly passed by them, and if the official inspectors failed to detect and notify defendant of any defect, defendant is not responsible for the consequences of such failure.

4. The court should have instructed the jury that if they found for plaintiff, the true measure of damages was the cost of putting the mill and machinery in the same condition as immediately before the explosion, and under this evidence this was the only damage to which plaintiff was entitled. The remaining alleged errors seem to us of minor importance and we will notice them further on.

As to the first alleged error, that plaintiff in any view of the case brought its suit against the wrong party, the court instructed the jury that if defendant did not actively control or assist in the control and management of the Park Steel Company, there could be no recovery and submitted to them the evidence bearing on that point. This was right; the action was not on a contract express or implied; it was, what formerly would have been, before our present statutory form of pleading, trespass on the case, for damages consequent upon an act in its character tortious. It was wholly immaterial how the Crucible Steel Company got into possession of the plant of the Park Steel Company, whether by a contract, by sufferance or by a trespass; the question is, was it in the control and management of the business of that company? Was it operating its machinery and boilers at the time plaintiff was injured? It is true, the evidence as to the possession and that defendant was in the active control and management of the plant of the Park Steel Company, is not altogether one-sided, but if there was any express contract which would have effectually rebutted the inevitable inference to which the circumstances pointed, that contract was in the possession and knowledge of the Crucible Steel Company. But it produced no such contract and the court could not have done other than submit the evidence to the jury. That evidence was ample to warrant the verdict in that particular against defendant. Appellant argued, that the evidence only shows that defendant bought the product of the Park Company each month. We think it goes much further than that. The manager of both companies was the same, the purchasing agent the same; the Crucible Steel Company made

invoices of the Park Company work in its own name and ordered work in its own name to be done for the Park Company and paid for it; Thomas, the secretary for both companies, testified in substance, that the real control and management of the Park Company was in the Crucible Steel Company; every director and officer of the Crucible Steel Company was a director and officer in the Park Company; they were paid salaries by the Crucible Steel Company but not by the Park Company; in a circular issued over its own name the Crucible Steel Company claimed as one of its properties the Park Mill; the repairs made on the exploded boilers by Munroe & Sons' workmen were billed to and approved by the Crucible Steel Company; Parks, vice president of the Crucible Steel Company, shortly after the explosion admitted that the defendant was the owner. All this, and much other evidence of a like significance was adduced tending to prove the fact averred by plaintiff. True, the nominal organization and identity of the Park mills as a corporation were maintained, but this was about the only fact tending to rebut the evidence offered by plaintiff. We think the court would have erred if it had not submitted the evidence to the jury.

The second and third errors complained of by defendant raise a much closer question. It is argued that Munroe & Sons, competent and reputable boiler makers, were independent contractors employed to repair the boilers and did repair them just before the explosion, and as the boilers were regularly inspected and passed by the official inspector of the county, therefore, there was no "absence of care according to the circumstances," and consequently defendant is not answerable for the injury. The ninth and tenth written requests of defendant for instruction and answers of the court thereto exhibit clearly the error complained of; they are as follows:

"9. The court is asked to further charge the jury that it appearing from the evidence that immediately prior to the accident, R. Munroe & Sons Company, reputable boiler makers, were employed to repair the said boilers in any particulars they might need repairing, and that in pursuance of said order they sent their employees, and as independent contractors did so repair said boilers and turn the same over to the Park Steel Company as in good condition, then if the said

boilers blew up from bad material, or unskillful work, the defendant is not responsible for injury to plaintiff, resulting from said defects.

" A. This point is affirmed, if the jury find that Munroe & Sons repaired the boilers and turned them over in good condition, and that such 'turned over as in good condition' meant and included that a careful inspection of the boilers had been made, and that Mr. Williams, chief engineer of the steel company, and Messrs. Munroe & Sons, both understood that such inspection had been made. The point is refused if the jury find that Mr. Williams, chief engineer in charge of the steel works, knew that such inspection was not a full inspection of the boilers internally, according to care and good usage, if proper and reasonable care and good usage required the removal of the tubes in order to reach all points inside of the boilers."

" 10. The court is asked to further charge the jury that it appearing by the testimony that in 1899 and 1900, and again in 1901, the boilers in question were regularly inspected by the county inspectors for Allegheny county, they being officers of the law, and charged with the duty of inspection, and that the said boilers were duly passed by said inspectors, then the defendant had a right to rely upon the truthfulness and sufficiency of said examination, and if the inspectors failed to detect defects, that this defendant is not liable to this plaintiff for any injury caused by the presence of said defects.

" A. In the light of the testimony, this point is refused."

We had occasion very recently to discuss this subject in Anderson v. Hays Manufacturing Company, 207 Pa. 106. The case was very much like this one in many of its facts. In that case the manager, who was the sole representative of the defendant company, employed skilled and reputable boiler makers to examine and repair a leaking boiler ; they worked at the boiler and made some repairs, then reported to the manager they had performed the work entrusted to them ; the manager was not an expert, knew nothing of the mechanism of boilers ; did not examine nor assist in the actual work of repair ; three months after the repairs it exploded, causing serious injury to the adjoining property of a hotel keeper who brought suit for damages. The evidence tended to show that

the boiler had neither been properly inspected nor properly repaired, and to this negligence was due the explosion. After announcing the common definition, that " Negligence is absence of care according to the circumstances," we said in that case, the circumstances did not indicate negligence beyond the point, where personal supervision by the manager who stood for the owner, must in the very nature of the case end. That it was the personal duty of the manager to see that the boiler was kept in repair and after knowledge of the leak it was his personal duty to have it examined and repaired by those who were competent for the work, but that there was no personal duty on the manager to crawl into the manhole and make a personal internal examination of the boiler, for if he had done so, he would not have known wherein it was defective. Nor had he the mechanical skill to put a patch over the leak. It, therefore, would have been, not care, but recklessness for him to have attempted to do work for which he was wholly incompetent.

Although that case approaches this one on its facts, there is a marked distinction as to the one very material fact. There, the representative of defendant did everything that the knowledge of a careful man suggested and refrained from that which a careful man would not dare attempt. But here, the representative of defendant, Williams, was an engineer of more than twenty years' experience as an inspector of boilers in this plant ; he had under his supervision more than one hundred boilers in this one mill ; it was his especial duty to inspect them, to have them cleaned, to pronounce on repairs and see that the boilers were maintained in safe condition ; in this particular duty he was the defendant. Donlan, a mechanic in the employ of Munroe & Sons was sent to this mill to work on the boilers ; he worked there under the direction of Williams, made such examination as Williams directed and supervised ; of the three boilers exploded, he examined the heads of two and made slight repairs to two of them; one he did not examine at all. From appearance of the fragments after the explosion, they were in such a condition of thinness and weakness from corrosion by impure water, that they were liable to explosion from pressure or injection of cold water producing intense pressure, and so were unsafe. There was evidence that a proper examination by a competent man like Williams

would have disclosed this unsafe condition and the necessity of condemning or replacing these boilers, as they were very old.

There was much evidence in this particular on both sides bearing on the alleged negligence of defendant. From Williams's own statement, he was an expert for the very purpose of examination and repair of boilers. He was not a mere mechanic employed to do a particular job of work; he was the defendant supervising and caring for one very important part of defendant's machinery and if he neglected his duty, his neglect was that of defendant. This is the obvious distinction between this case and that of Anderson v. Hays Manufacturing Company referred to. If it be argued that it was Donlan's neglect that caused the accident, and that he was a mechanic employed by Munroe & Sons, the answer is, that Donlan worked under the direction and supervision of Williams who knew what Donlan did and what he neglected to do. The argument based on the assumption that Munroe & Sons, as independent contractors, inspected and repaired the boilers and then turned them over to defendant as safe, loses its force in the face of the evidence that their mechanic worked under the direction and supervision of Williams, who in that particular was the defendant corporation. We are of opinion that there was no error in the court's qualified answer to defendant's ninth point.

Nor was there error in refusing to affirm the tenth point. On both points the court stated clearly in its general charge to the jury the test of negligence as settled by the law of our own state, though our cases differ somewhat from those of several other states. The owner is answerable in damages for his own negligence in the management of the boiler, or in using it when in a dangerous or defective condition. This is the full extent of the liability imposed upon defendant by the charge of the court. What evidence is sufficient to warrant the jury in finding negligence must depend upon the relations of the owner to the acts or omissions constituting negligence in the particular case.

The tenth point seems to be based on what we said in Service v. Shoneman, 196 Pa. 63. But the facts in that case are wholly different from those in this one. The owner there was wholly ignorant, either as to design or method of operating a

boiler; he used all the means open to him to procure the best and safest boiler, employing a thoroughly competent engineer to run it; while in use it was regularly inspected by a sworn official inspector, who had inspected it only three days before the accident and had then delivered to the owner his official certificate of its soundness and steam-bearing capacity; while the engineer was tightening a screw which held a plate on the end of the boiler, the plate blew off and the escaping steam scalded to death a fellow-workman of the engineer. We held that there was no sufficient evidence of negligence on the part of the owner; that the presumption was, the official inspector performed his duty and there was no evidence to rebut that presumption. If the examination of the inspector had been a negligent one and the owner had known the fact or had reason so to believe it, the official certificate would have had no bearing in his favor or on the question of negligence. In this case before us, there was evidence tending to show that the official inspection was perfunctory and insufficient; that the owner acting by Williams relied on its own examination and its own judgment as to what repairs were necessary. The enactment of the boiler inspector laws was but an exercise of the police powers of the state; they were not intended to serve as an impenetrable shield to the negligence of the owner.

Defendant's eleventh point raises the question of the measure of damage. That point requested the court to instruct the jury that all plaintiff could recover was " the amount of money required to put the mill and machinery in as good condition as they were before the explosion." The court refused to so instruct; on the contrary, in its general charge said to the jury : " If the plaintiff is entitled to recover, the measure of damages includes the direct loss to the buildings and machinery by fire, the direct loss to stock, the profits lost by the temporary breaking up of plaintiff's business, an additional allowance for delay in payment if the jury deems it proper that such an allowance should be made."

The complaint of the appellant is as to the allowance of profits and interest. The court suggested to the jury that they should specify in their verdict, if for plaintiff, the amount allowed for loss of profits and amount allowed for delay in payment. The jury accordingly specified that they had included

in their verdict $10,000 for loss of profits, and for interest, $2,227.20. First, was there error in the allowance of profits? As before noticed, although the distinction in pleading had been abolished by statute, this is really an action of trespass on the case to recover damages consequent upon the negligence of defendant. There is not in it a single element of contract; in such cases damages are of two kinds, compensatory such as make the wronged party whole as of the time of the injury, or punitive, where the tortious act is aggravated by evil motive, malice, violence, oppression or fraud. There was no evidence in this case which would have warranted the jury in finding punitive damages; they were then confined to those strictly compensatory, yet they went further and found for plaintiff $10,000 profits it would have made during the time the mill was stopped and in process of rebuilding. It is immaterial that the evidence showed plaintiff would probably have made this profit, if it had been operating its mill instead of rebuilding; the profit is still to a large extent conjectural, depending upon so many contingencies that such damages are termed speculative. It has more than once been distinctly ruled by this court that future profits are not allowable as damages in cases of this class. In some actions for damages, founded on a breach of contract, profits that would have been made had the contract not been broken, have been allowed, but these were exceptions, either on their facts, or on the provisions of the contract. We know of no case in this state that such damages have been allowed for a consequential injury where there was no element warranting punishment of the wrongdoer. No such case has been cited by counsel. The learned judge of the court below cites two cases, one from Illinois and one from Michigan, but we prefer to follow the settled law of our own state.

The case of Erie City Iron Works v. Barber & Co., 102 Pa. 156, was an action on the case for damages. Barber & Company had purchased from the Iron Works Company a boiler to be made of a particular iron capable of sustaining a maximum pressure of 160 pounds and perfectly safe. The boiler was put in place in the purchaser's sawmill and soon after exploded doing great damage to the purchaser's property. They brought suit for damages and offered evidence showing that the boiler

was wholly different in quality from that contracted for; was of inferior iron and poorly constructed, and consequently the explosion followed. The court below, in substance, instructed the jury that they could give such damages as plaintiffs showed they had sustained; the verdict was in excess of any actual loss from the destruction of property. This court reversed the judgment saying, that the damages should be compensatory only, "that the true measure of damages was the amount of money required to put the mill and machinery including the boiler in as good condition as they were before the explosion, and that for all incidental damages, such as the loss of profits and the like, the interest on the money thus expended must be regarded as a full equivalent." Penna. Railroad Co. v. Books, 57 Pa. 339, is to the same effect, that unless the injury has been wantonly inflicted the damages must be strictly compensatory. We have held the same rule several times since. It is true, as argued by appellee, that Erie City Iron Works v. Barber, the first case cited, again came before this court in 106 Pa. 125, and a judgment for about the same amount as the first one was affirmed, but on the second trial the court instructed the jury to find the rental value of the mill during forty-eight days when it was being rebuilt and they found this to be $1,000,—but they were expressly instructed not to find probable profits. The case of Imperial Coal Co. v. Port Royal Coal Co., 138 Pa. 45, also cited by appellee, was a suit for breach of contract. Profits were allowed to be recovered because of the special stipulations of the contract, this court in affirming the judgment treating it as exceptional.

This injured plant was wholly idle for three weeks after the explosion; it was then running in part four weeks and at the end of seven weeks was in complete running order. The profits it would have made, if in full running order these seven weeks when either wholly or partly idle, is what the jury estimated at $10,000. The loss on buildings and machinery as proven by plaintiffs was about $35,000; if in seven weeks their profits on this property in operation would have been $10,000, in a little more than three months it would have paid for itself in profits. The $10,000 is arrived at by computing the net profits for six months before the explosion; that they would have been the same for the two months following neither the court below nor

we have any means of determining with approximate certainty. Whether if plaintiff had offered to prove the fair rental value of the property during the period of rebuilding, it would have been allowable, is not under these facts entirely clear; it is probable, however, that under the rulings in Erie City Iron Works v. Barber, 106 Pa. 125, supra, and Harvey v. Susquehanna Coal Co., 201 Pa. 63, such evidence would have been admissible. But we do not decide this point; no such offer was made; it was not argued in the court below nor here; defendant only offered to prove profits and on the testimony offered the court instructed the jury they might allow such profits as damages. But if such an offer had been made and the evidence admitted, then clearly, no interest on the money awarded during the time the mill was idle could have been allowed for the interest is a compensation for the nonproductiveness of the capital lost during the period of enforced idleness.

We think the court below erred when it adopted a measure of damages not authorized by the law of this state and one that would lead to wild guessing by juries as to probable future profits, guessing almost as uncertain as hoped for profits in the stock market. As to that part of the judgment made up of profits, the $10,000, we reverse it and set it aside. As to the interest, the jury found that for delay in payment, plaintiff was entitled to interest. This was their right if they chose to adopt that method of compensation for delay of payment. It should be computed on $36,646.94, from December 20, 1901, and not on $46,646.94 which in view of our ruling is now erroneous as a matter of computation.

As to the complaint, that court erred in not granting a new trial because of the objectionable remarks of plaintiff's counsel in the argument, that was for the consideration of the court below on the motion for a new trial. These remarks could not have been so prejudicial to defendant as to require us to take notice of them as reversible error.

As to the alleged erroneous rulings of the court on the admission of evidence, we have carefully examined them and find they have no such merit as warrants discussion or reversal of the judgment.

The judgment as heretofore indicated should have subtracted from it the $10,000 allowed as profits; this would leave it stand

$36,646.94 on which interest should be computed at six per cent from December 20, 1901. The judgment thus modified is affirmed. All the assignments except the first and eleventh which involve the instruction on the measure of damages are overruled; the first and eleventh are sustained to the extent we have pointed out.