# Flannigan's Estate.

*Decedents' estates—Profits—Will—Executors and administrators.*

Where a blacksmith is supposed to have died intestate, and his administrator, pending distribution of the estate, runs for a time the decedent's shop at a profit, employing the foreman, and then sells the shop to the foreman, and thereafter a will is discovered by which the shop is given to the foreman absolutely, the foreman will be entitled to receive back the purchase money which he paid for the shop, but he will not be entitled to any of the profits earned while the administrator was running the shop.

Argued May 3, 1905. Appeal, No. 207, April T., 1905, by E. A. McCabe, from decree of O. C. Allegheny Co., Oct. T., 1904, No. 83, dismissing exceptions to adjudication in Estate of Michael Flannigan, deceased. Before RICE, P. J., BEAVER, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Exceptions to adjudication.
The opinion of the Superior Court states the facts.

*Error assigned* was decree dismissing exceptions to adjudication.

*F. C. McGirr,* of *Marron & McGirr,* with him, *L. K. Porter,* for appellant.—The claimant is not entitled to profits: Act of Feb. 24, 1834, P. L. 73, sec. 68; McNeil & Bro. Co. v. Crucible Steel Co., 207 Pa. 493; Erie City Iron Works v. Barber, 102 Pa. 156; Hyde v. Kiehl, 183 Pa. 414.

We claim the legatee should not have been allowed the profits earned in carrying on the testator's business:

1. Because the funds of the estate were employed by the administrator in conducting said business, and the profits would go to the estate.

2. The legatee is not entitled to the profits made by the administrator, because it does not follow that the legatee would have earned as much, or any sum, if he had received the shop at testator's death and carried it on himself, and because profits are uncertain and speculative.

3. The measure of damages is the value of the shop with interest, or instead of interest, the value of the use of the shop, or the rental value, while the legatee was deprived of same.

*W. A. Magee*, of *Fagan & Magee*, for appellee, cited: Buist's Est., 8 Phila. 190; Kemble v. Dresser, 42 Mass. 271; Isle Royale Mining Co. v. Hertin, 37 Michigan, 332; Urie v. Johnston, 3 P. & W. 212.

OPINION BY MORRISON, J., July 13, 1905:

From the appellant's history of the case, which seems to be satisfactory to the appellee, we gather the following facts: That Michael Flannigan, a blacksmith, died in the city of Pittsburg on January 11, 1899; he was supposed to have made no will and had no known heirs. Proceedings were begun to escheat the estate to the commonwealth, but many alleged heirs appeared, both in this country and in Ireland, and after several years of litigation the court decided that Patrick Flannigan, of Ireland, was the next of kin. Letters of administration were first granted to E. A. Barnes, but after a few months he was removed and letters of administration were issued to the Safe-Deposit and Trust Company of Pittsburg. Both administrators carried on the blacksmith shop after decedent's death, from January 11, 1899, to August 1, 1899, when the administrators sold the shop to John Koehler, who had been decedent's foreman, for the sum of $900. During the time the administrators carried on the business they employed Koehler and paid him $700 in wages. About April 1, 1900, a will of decedent, dated May 3, 1898, was discovered by E. A. McCabe and offered for probate. A lengthy contest of the

will was carried on, but it was finally admitted to probate on August 16, 1904. The will gave the blacksmith shop to John Koehler and on the audit of the administrator's account, Koehler, legatee, presented a claim for $5,084.37, being the sum of $900 paid by him for the blacksmith shop and the receipts of said business over the expenditures from April 5, 1899, to March 28, 1900. E. A. McCabe, the residuary legatee and devisee under said will, objected to the claim of Koehler as to the receipts and profits realized from the business conducted by the administrators. After a patient investigation by the interested parties, it was agreed that the profits realized by the administrators in conducting the business from the death of decedent to the date of the sale of the shop, amounted to $604,36. The court awarded to Koehler the $900 paid by him for the shop, with interest thereon to date of decree, and also awarded him the profits realized by the administrator in conducting the business, with interest thereon to the date of the decree. The residuary legatee objected to the allowance of the profits and interest thereon and excepted to the decree because of the allowance of the same, but the exceptions were overruled and the full claim allowed by the final decree, and thereupon E. A. McCabe appealed.

It is conceded that so much of the decree as awarded the $900, with interest thereon, to Koehler is correct, but it is contended that on no legal theory can the profits of the blacksmithing business, which was carried on by the administrators, at their own risk and expense, be awarded to Koehler. It is conceded that the administrators had no knowledge of the will and that they carried on the business at their own risk and expense in entire good faith. In addition to this, they employed Koehler, paying him satisfactory wages during all of the time he was kept out of the use of the shop, by reason of their carrying on the business for the estate. Under familiar rules of law it is well settled in Pennsylvania that an administrator carrying on a business like that in this case, assumes all the risks, and if the business is unprofitable, he will be surcharged a sufficient amount to make the estate whole. It seems to us that a simple illustration will show the fallacy of the position of the learned court in awarding the profits of the business so carried on by the administrators to Koehler, who assumed no risk or respon-

sibility whatever. 1. It has not been and could not be found that if Koehler had carried on the business, for himself, he would have made any profits. 2. If instead of profits the business had resulted in a loss, on no theory of law could Koehler have been held liable for the loss or any part of it. 3. Koehler's claim does not rest on any contract, either express or implied, nor does it rest upon a trespass, so that damages could be recovered, either direct or consequential.

The administrators were not violating the law nor were they knowingly or legally depriving Koehler of any of his rights. "All such acts of administration as would be in due course of law in case of intestacy, if done in good faith, and without notice of a will, shall not be impeached, though a will should afterwards be discovered and established:" Act of February 24, 1834, P. L. 73. See section 68, p. 86.

Giving this provision of the law its plain legal effect it establishes the legality of what was done by the administrators in this matter until the discovery of the will. It is, therefore, difficult to discover any theory which will give Koehler the benefit of the profits accruing from such business. The administrators from time to time, used the money of the estate, at their own risk, in carrying on the business. Not a penny of Koehler's money nor a particle of his credit earned these profits. The decree of the learned court restores to him his $900 which he paid for the shop, which belonged to him under the will, and interest thereon. This portion of the decree rests upon a solid basis. The estate had Koehler's money and the law implies a contract to repay it with interest. But as to the profits of the business, the estate had nothing belonging to Koehler and it is under no obligation to hand over to him $604.36, with interest thereon, in addition to full and liberal wages during all of the time he was kept out of the use of the shop. It is possible, if he had presented a claim for the use or rental value of the shop during the seven months of its use by the administrators, and proved the value thereof, it might have been allowed him. But that question is not raised in this record and, therefore, it is not decided.

In McNeil & Brother Co. v. Crucible Steel Co., 207 Pa. 493, it is held as stated in the syllabus: "In an action to recover damages for injuries caused by the negligent explosion of a

boiler on the property of the defendant, the damages cannot include the probable loss of profits which might have been earned by the plant destroyed during the period of rebuilding." In that case Judge DEAN (p. 504) said: "Whether if plaintiff had offered to prove the fair rental value of the property during the period of rebuilding, it would have been allowable, is not under these facts entirely clear; it is probable, however, that under the rulings in Erie City Iron Works v. Barber & Co., 106 Pa. 125, and Harvey v. Susquehanna Coal Co., 201 Pa. 63, such evidence would have been admissible." See also Erie City Iron Works v. Barber & Co., 102 Pa. 156, where the Supreme Court held: "That the true measure thereof was the amount of money required to put the mill and machinery, including the boiler, in as good condition as they were before the explosion, and that for all incidental damages, such as the loss of profits and the like, the interest on the money thus expended must be regarded as a full equivalent." This was said in a case where the action was brought to recover damages for the destruction of plaintiff's mill by the explosion of a boiler, which was alleged to have been defectively constructed by defendants. But the Supreme Court would not allow damages for prospective profits.

It may be said in our case that the profits had been ascertained before the decree was made and, therefore, they are not prospective. The answer to this is that the profits ascertained were those made by the administrators. If Koehler had taken the shop at the date of the death of Flannigan, it is estimating prospective profits to undertake to say that he would have made $604.36 or any other sum.

In Imperial Coal Co. v. Port Royal Coal Co., 138 Pa. 45, it is held that for a breach of contract to supply plaintiff company with coal sufficient to keep its coke plant in full operation for a definite period, to be converted into coke for the defendant company at a fixed price per ton, the plaintiff may recover the net profits which it certainly would have made had the contract been performed. But that case is based upon the breach of a contract, and the opinion of the Supreme Court recognizes the rule that mere speculative profits cannot be recovered even in an action for breach of contract.

The court below says in the opinion: "The administrator

in carrying on the business acted as trustees for the legatee."
We cannot find a scintilla of evidence to support the statement.
The undisputed evidence shows that no one knew there was a
legatee or a will, and the evidence shows that the administra-
tors carried on the business for the estate till such time as a
purchaser for the shop could be found.  The learned court
further says:   "The residuary legatee who objects to the
profits being so distributed (meaning to Koehler), has no in-
terest in the shop, no title to anything realized from it, and
the profits, therefore, could not be distributed to him."   But
the question for consideration is, do the profits belong to Koeh-
ler ?  If they do not they will go into the residuary estate,
and it is to be presumed that the learned court below will see
that they are properly distributed.   The objection that the re-
siduary legatee has no right to object or appeal appears to be
frivolous.   If these profits do not belong to Koehler, then it
would seem that, under the will, the same would go to the re-
siduary legatee, the appellant.   This, however, is not now de-
cided, except in so far as to give the appellant a prima facie
standing to be heard and appeal.

We sustain the assignments of error in so far as they refer
to the allowance of $604.36 profits and the interest thereon of
$104.01, and reverse the decree to the end that the total sum
of $708.37 will go into the residuary estate, and so much of
the decree as awards $900, with interest thereon to date of
decree, to John Koehler is affirmed.   And it is further ordered
and decreed that the appellee, John Koehler, pay the costs of
this appeal.