## Schweikert v. Mahoning and Shenango Railway and Light Co.

*Railroads—Crossovers—Liability to maintain crossovers at grade crossings as between a first and second occupant of the ground—Increase of number of tracks by public service company first on the ground—Responsibility of the junior company, being a street railway company, to employees of a steam road running its cars over tracks of senior company—Presumption of covenant on the part of company operating the facilities of another company.*

1. When a railroad has laid its tracks across a public highway, and a street railway company subsequently desires to cross the same on said highway, it is the duty of the street railway company to install and maintain the crossover.

2. When a public service company has gained priority in a crossing by reason of being first on the ground, the priority extends to additional tracks laid after the junior company has also occupied the ground.

3. The junior company owes the same duty to any person rightfully using a crossing, whether he be an employee of a steam railroad company using the tracks of the senior company by agreement or a traveler on a public highway at that point.

4. A company operating the tracks of a street railway company is presumed to have covenanted to keep the same in repair, and unless it produces a contract to the contrary, this presumption is conclusive.

Trespass. Motion for judgment n. o. v. C. P. Lawrence Co., Dec. T., 1916, No. 89.

*James A. Chambers,* for plaintiff; *C. H. Akens,* for defendant.

EMERY, P. J., Aug. 21, 1922.—The jury trying this case returned a verdict in favor of the plaintiff, Rose C. Schweikert, and the defendant, the Mahon-

ing and Shenango Railway and Light Company, now moves for judgment *non obstante veredicto*.

On July 22, 1916, Edward Schweikert, husband of plaintiff, Rose C. Schweikert, was killed by the tender of a locomotive upon which he was riding, and which locomotive and tender were the property of the Buffalo, Rochester & Pittsburgh Railway Company. . The accident occurred on Gardner Avenue crossing, in the City of New Castle, County of Lawrence and State of Pennsylvania. At the time of the accident the Buffalo, Rochester & Pittsburgh Railway Company, for whom plaintiff's husband was employed as a brakeman, had a working agreement with the Baltimore & Ohio Railroad Company for the use of its two tracks crossing said Gardner Avenue. The defendant company was operating a double-track street railway over and along said Gardner Avenue, its two tracks crossing the tracks of the Baltimore & Ohio Railroad at right angles. The crossing was made by means of a frog or platform, and had been put in for a considerable length of time before the said accident by the New Castle Electric Street Railway Company.

At and prior to July 22, 1916, the Mahoning and Shenango Railway and Light Company, the defendant, had acquired the right to use the tracks of the New Castle Electric Street Railway Company in Gardner Avenue by lease or resolution, and, as a result of which, it maintained and kept in good order and repair the frog or platform placed at the point of intersection of the said street railway line with the line of steam railroad operated by the Baltimore & Ohio Railroad Company. On said July 22, 1916, the said track had become out of repair, the bolts holding the parts together becoming worn and broken and the foundation under the said frog being inadequate to support it, so that the rolling stock of the railroad, in passing over the frog, caused it to sink or sag down some eight or more inches. Attached to and connected with the said frog, the defendant company, in order to have a smooth and even surface in the street where the frog was laid, had spiked heavy planks to the ties supporting the said frog.

On the morning of the accident plaintiff's husband, Edward L. Schweikert, in the performance of his duties as a brakeman for the Buffalo, Rochester & Pittsburgh Railway Company, was riding on the step attached to the rear of the tender of one of its locomotives. The locomotive was being backed over the said frog in Gardner Avenue, and in crossing over it the frog sank down, allowing the step on which the said Edward L. Schweikert was riding to come in contact with one of the planks placed at the frog by the defendant company, thereby jostling and throwing him from the step of the tender on which he was riding in front of the moving tender and locomotive, causing him to fall in such a position that the wheels of the tender ran over his body and caused his death. .

The unsafe condition of the said frog was known to the defendant company, and had been known by it for a considerable length of time before the accident, as is evidenced by the fact that the defendant company had, at the time of the accident, a new frog or platform on the ground to replace the one in the street.

On the trial of the case the plaintiff called witnesses to prove that the Buffalo, Rochester & Pittsburgh Railway Company had a working agreement with the Baltimore & Ohio Railroad Company for the use of its tracks over and across Gardner Avenue; that the deceased, husband of plaintiff, at the time of the accident was performing his duties as brakeman for the said Buffalo, Rochester & Pittsburgh Railway Company; that the injuries which resulted in his death were due to the fact of the locomotive tender on which

3 D. & C.

he was riding sinking down in crossing the frog placed in said Gardner Avenue by the defendant company, so that the step on which he was standing caught on the planks attached to the frog; that the defendant company had leased or acquired the right from the New Castle Electric Street Railway Company to the use of its lines over and along Gardner Avenue; that it operated its cars over said line; that it collected fares from passengers using its cars; that it, the defendant company, had done work on this frog from time to time in keeping it in repair, replacing planks connected to it, and that the maintenance of said frog and crossing was wholly under the care and control of the defendant company; that at the time of the accident, and for a long time prior thereto, the said frog or platform in the said crossing on Gardner Avenue had become defective and out of repair; that the said frog would sag down when steam cars were crossing over it, and that the accident happened as the result of the negligence of the defendant company in permitting this condition to exist and in not repairing the said frog and keeping it in a proper and safe condition for the steam cars to pass over it.

In the trial of the case the defendant company contended that it was not responsible for the accident; that it in no way contributed to it; that it did not own the track and frog on said Gardner Avenue, but that it was only an operating company, having obtained its right to operate its street cars over the tracks on said Gardner Avenue by lease or resolution from the New Castle Electric Street Railway Company, and that it was the duty of the New Castle Electric Street Railway Company to maintain and keep in good order and repair the said track or crossing, and, being only an operating company, that it could not be held liable in damages for accidents caused through the unsafe condition of the said frog when used by steam cars in passing over the tracks of the Baltimore & Ohio Railroad Company.

The facts, as they developed at the trial, were that the tracks of the Baltimore & Ohio Railroad Company were laid across Gardner Avenue many years prior to the construction of the tracks of the street railway company, but that the track upon which the deceased—husband of plaintiff—was operating at the time he was killed was a second track laid in 1904 or 1905, and after the construction of the line of street railway. The fact that the Baltimore & Ohio Railroad Company had laid its tracks across Gardner Avenue prior to the use of it by the New Castle Electric Street Railway Company would make it the senior company on said Gardner Avenue, regardless of the number of tracks subsequently laid across the street by it, and gives it a prior right to the use of the street. This question was clearly decided in Smethport R. R. Co. v. Pittsburgh, Shawmut & North. R. R. Co., 203 Pa. 176, in which the plaintiff was endeavoring to cross the lines of the defendant, which was then operating a line of single-track railroad. Defendant objected unless such crossing be constructed so as to allow it room for such additional tracks as the growth of its business might demand. On this question the court say: "The rights of the first occupant of the ground are superior to the new claimant. In measuring the extent of the rights of the older company there must be a liberal construction for the future as well as existing necessities, the uses of the existing tracks, the construction of additional ones, the convenient storage of freight at all seasons and the unembarrassed transaction of all business."

The same principle is held in Lehigh & New England R. R. Co. v. D., L. & W. R. R. Co., 240 Pa. 401; also, Chicago, etc., Ry. Co. v. Old Col. Trust Co. et al., 216 Fed. Repr. 577. In the last case the court say: "An operating railroad, by changing its grades or putting in double tracks, does not thereby become

the junior road in relation to another road constructed after its own, whose tracks cross its right of way, so as to impose on it the burden of paying the cost of a new crossing."

In the light of the principles enunciated in the above cited cases, we are convinced that the defendant was bound to provide for and keep in repair the crossing over the second track of the railroad as it had been [to keep in repair the crossing over] the first. Defendant recognized this duty and had placed one or more crossings at this point before the accident, and it had a frog or crossing on the ground ready to be put in at the time of the accident. We can come to no other conclusion than that the defendant was responsible for this crossing, and that plaintiff's husband, while rightfully using it, was killed as a result of its defective condition.

In the argument before us, defendant's counsel laid great stress on the fact that the defendant owed no duty to Edward L. Schweikert while using the crossing as an employee of the Buffalo, Rochester & Pittsburgh Railway Company. It is true that the street railway company had the right to cross the tracks of a steam railroad company on a public highway in this city. That right is given to it by statute. The question here, however, is not the right of a street railway to cross the tracks of a steam railroad, but the duty of a street railway company to keep in good order and repair the structures placed therein by it. The street railway company, in crossing the tracks of the steam railroad, found it expedient to place at this point a frog. In doing so it was necessary to replace the rails of the railroad company at this point, and it then became necessary for the railroad company to pass over this track in making the crossing, and in taking out the rails of the steam railroad and replacing them with a frog of its own seclection, it became the duty of the street railway company to keep the frog in repair and in such condition as not to cause accidents.

"A street railway company, in constructing its tracks across steam railroad tracks rightfully located on a city street, must perpetually maintain and repair such crossing according to the direction of the engineer of the steam road:" Cent. Dist. Ry. Co. v. Philadelphia Ry. Co., 52 Atl. Repr. 752.

In the foregoing case, which was before the Supreme Court of Maryland, the court said, *inter alia:* "The crossing of the old way is made for the benefit of the second comer and not for the benefit of the owner of the old way, and even though both occupants claim under license from the municipality, common justice dictates that the one for whose exclusive benefit the crossing is made should defray the expense of constructing it, and his continuance of the crossing is as much for his benefit as was the construction of it in the first instance. It is equally obvious that he should maintain it wholly at his own cost." The same principle is laid down in 36 Cyc., 1424; Chicago, etc., Ry. Co. v. Hammond-Whiting Ry. Co., 46 N. E. Repr. 999; Louisville R. R. Co. v. Central, etc., R. R. Co., 144 S. W. Repr. 739.

The defendant company, therefore, owes the same duty to any person rightfully using the frog or crossing, whether he be an employee of the steam railroad company or a traveler on a public highway at that point.

It was strongly contended in the argument of counsel for defendant that plaintiff had not shown a contract, agreement or lease to have been entered into by the defendant company with the New Castle Electric Street Railway Company for the maintenance and upkeep of the street railway tracks in Gardner Avenue. To our mind, the case of James McNeal & Bro. Co. v. The Crucible Steel Co. of America, 207 Pa. 493, clearly rules this question, and in which Mr. Justice Dean, on page 496, says: "It was wholly immaterial

3 D. & C.

Schweikert *v.* Mahoning and Shenango Railway and Light Company.

how the Crucible Steel Company got into possession of the plant of the **Park Steel Company**, whether by a contract, by sufferance or by trespass; the question is, was it in the control and management of the business of that company? Was it operating its machinery and boilers at the time plaintiff was injured? It is true, the evidence as to the possession and that defendant was in the active control and management of the Park Steel Company is not altogether one-sided; but if there was any expressed contract which would have effectually rebutted the inevitable inference to which the circumstances pointed, that contract was in the possession and knowledge of the Crucible Steel Company. But it produced no such contract, and the court could not have done other than submit the evidence to the jury."

In the case at bar the evidence was sufficient to show that the defendant company was in possession of the street railway tracks in Gardner Avenue; that it was operating street cars over the said tracks; that it was receiving the fares deposited by passengers riding on its cars; that it had repaired the frog on which the accident occurred; and that it had a new frog lying on the ground to replace the one then in the street. The evidence also showed that if there was a contract or a lease or an agreement of some character for the upkeep of the tracks and frog in Gardner Avenue, it was in possession of the defendant company. But it produced no such contract or lease, and we could not have done other than submit the case to the jury.

After a careful reading of the pleadings, the evidence and charge of the court, we find no error in refusing defendant's point for binding instructions, and feel convinced that we should now refuse defendant's motion for judgment *non obstante veredicto.*

And now, Aug. 21, 1922, motion of defendant for judgment *non obstante veredicto* is refused.

From William McElwee, Jr., New Castle, Pa.